**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALBERT P. O'DONNELL, REBECCA M. O'BRIEN, and GEORGE GEVARAS, on behalf of themselves and all others similarly situated, | CIVIL ACTION NO.: |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| SCRANTON SCHOOL DISTRICT, KATIE GILMARTIN, TOM SCHUSTER, BARBARA DIXON, GOPAL PATEL, GREG POPIL, TOM BORTHWICK, KEN NORTON, PAIGE GEBHARDT COGNETTI, ROBERT LESH, MARK MCANDREW, ROBERT CASEY, PAUL DUFFY, CY DOUAIHY, JIM TIMLIN, and ROBERT SHERIDAN, | |
| Defendants. | |

**CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

I.   NATURE OF ACTION ........................................................................1

II.  PARTIES ..........................................................................................1

   A.   Plaintiffs.....................................................................................1

   B.   Defendants ..................................................................................3

III. JURISDICTION AND VENUE ........................................................7

IV.  FACTUAL BACKGROUND ............................................................8

   A.   Asbestos Exposure Hazards ........................................................9

   B.   The District's Knowledge About Asbestos in Schools ............13

      1.   Northeast Intermediate Asbestos .......................................18

      2.   Prescott Elementary Asbestos............................................19

      3.   McNichols Plaza Elementary Asbestos .............................19

      4.   South Scranton Intermediate Asbestos..............................20

      5.   Adams Elementary Asbestos .............................................21

      6.   Sumner Elementary Asbestos ............................................22

      7.   Bancroft Elementary Asbestos ..........................................22

      8.   West Scranton High School Asbestos ...............................23

      9.   Robert Morris Elementary Asbestos..................................25

      10.  Willard Elementary Asbestos ...........................................26

      11.  West Scranton Intermediate Asbestos ..............................27

      12.  Whittier Elementary (Annex) Asbestos............................27

      13.  Neil Armstrong Elementary Asbestos ..............................28

      14.  Administrative Building Asbestos.....................................28

   C.   Lead Exposure Hazards.............................................................29

   D.   The District's Knowledge About Lead in Drinking Water......31

      1.   Armstrong Elementary Lead...............................................33

      2.   Bancroft Elementary Lead ..................................................33

      3.   McNichols Plaza Elementary Lead ...................................34

4.    Northeast Intermediate Lead.............................................................36

5.    Prescott Elementary Lead .................................................................36

6.    Memorial Stadium Lead ....................................................................38

7.    Whittier Elementary Lead..................................................................39

8.    West Scranton Intermediate Lead......................................................39

V.   CLASS ALLEGATIONS.................................................................................41

VI.  REQUESTS FOR RELIEF ............................................................................45

# I.     NATURE OF ACTION

1.     Plaintiffs, Albert P. O'Donnell, Rebecca M. O'Brien, and George Gevaras, on behalf of themselves and all others similarly situated (the "Class Members"), brings this action against Defendant, Scranton School District, and those Scranton School Board Members who served between 2016-2019, Katie Gilmartin, Tom Schuster, Barbara Dixon, Gopal Patel, Greg Popil, Tom Borthwick, Ken Norton, Paige Gebhardt Cognetti, Robert Lesh, Mark McAndrew, Robert Casey, Paul Duffy, Cy Douaihy, Jim Timlin, and Robert Sheridan, stemming from the Plaintiffs and Class Members' unnecessary exposure to asbestos and lead over an extended course of time.

2.     Plaintiffs and the putative Class have suffered and continue to suffer deprivation of their constitutional rights under color of state law, and seek damages in the form of compensatory damages, medical monitoring, punitive damages, costs and attorneys' fees pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, the laws of the United States, as well as the laws and Constitution of the Commonwealth of Pennsylvania.

# II.     PARTIES

## A.     Plaintiffs

3.     Plaintiff, Albert P. O'Donnell, is a citizen of the Commonwealth of Pennsylvania.  For the past 16 years, Mr. O'Donnell has been the principal of

William Prescott Elementary School, a public elementary school on Prescott Avenue in Scranton, Pennsylvania, which is operated by the Scranton School District.  On January 30, 2020, Prescott Elementary School was closed due to the presence of dangerous levels of asbestos and lead in the school's drinking water. Plaintiff has, or will otherwise need to, spend money for an unspecified duration of time to undergo testing to monitor his health and exposure to both asbestos and lead.

4.      Plaintiff, Rebecca O'Brien, is a Citizen of the Commonwealth of Pennsylvania.   For the past 6 years, Ms. O'Brien has been an Eighth Grade Reading Specialist at Northeast Intermediate, a public middle school on Adams Avenue in Scranton, Pennsylvania, which is operated by the Scranton School District.   On January 30, 2020, Northeast Intermediate was closed due to the presence of dangerous levels of asbestos and lead in the school's drinking water. Due to the dangerous conditions Northeast remains closed and may never reopen. Plaintiffs has, or will otherwise need to, spend money for an unspecified duration of time to undergo testing to monitor her health and exposure to both asbestos and lead.

5.      Plaintiff, George Gevaras, is a citizen of the Commonwealth of Pennsylvania. For over 16 years, Mr. Gevaras was a maintenance worker at multiple Schools within the District, until he retired in December 2017.  In

multiple and repeated instances, Mr. Gevaras was instructed by District officials to scrap and remove old paint and plaster, remove old flooring, remove old insulation, and remove other old building materials.  Based upon the recent revelations about asbestos and lead discussed in detail herein, Mr. Gevaras believes and therefore avers that he was repeatedly exposed to asbestos and lead in unsafe and dangerous levels, notwithstanding the fact that District officials never warned or otherwise informed him of the presence of asbestos and lead.  Plaintiff has, or will otherwise need to, spend money for an unspecified duration of time to undergo testing to monitor his health and exposure to both asbestos and lead.

### B.   Defendants

6.     Defendant, Scranton School District (the "District"), is a public-school district located within the Commonwealth of Pennsylvania and having offices located at 425 North Washington Avenue, Scranton, Lackawanna County, Pennsylvania 18503.

7.     The following eighteen (18) schools currently comprise the District – Scranton High School; West Scranton High School; Northeast Intermediate; South Scranton Intermediate; West Scranton Intermediate; Adams Elementary; Armstrong Elementary; Bancroft Elementary; Tripp Elementary; Kennedy Elementary; McNichols Plaza Elementary; Morris Elementary; Prescott Elementary; Sumner Elementary; Whittier Elementary; Willard Elementary;

Lincoln Jackson Academy; and Monticello School; and in addition, the District owns, possesses, controls, and/or maintains Memorial Stadium and the Administrative Building (collectively, the "Schools").

8.    Defendant, Katie Gilmartin ("Gilmartin"), is a current School Board Member.  Gilmartin was a member of the Scranton School Board between 2017-present.  Upon information and belief, Gilmartin had access to and was able to review the environmental engineering reports prepared about the presence of asbestos and lead in the District Schools.

9.    Defendant, Tom Schuster ("Schuster"), is a current School Board Member.  Schuster was a member of the Scranton School Board between 2016-present.  Upon information and belief, Schuster had access to and was able to review the environmental engineering reports prepared about the presence of asbestos and lead in the District Schools.

10.    Defendant, Barbara Dixon ("Dixon"), was a School Board Member until her recent resignation in January 2020.  Dixon was a member of the Scranton School Board between 2017-2020.  Upon information and belief, Dixon had access to and was able to review the environmental engineering reports prepared about the presence of asbestos and lead in the District Schools.

11.    Defendant, Gopal Patel ("Patel"), is a former School Board Member. Patel was a member of the Scranton School Board in 2019.  Upon information and

belief, Patel had access to and was able to review the environmental engineering reports prepared about the presence of asbestos and lead in the District Schools.

12.     Defendant, Greg Popil ("Popil"), is a former School Board Member. Patel was a member of the Scranton School Board between 2018-2019.  Upon information and belief, Popil had access to and was able to review the environmental engineering reports prepared about the presence of asbestos and lead in the District Schools.

13.     Defendant, Tom Borthwick ("Borthwick"), is a former School Board Member.  Borthwick was a member of the Scranton School Board in 2019.  Upon information and belief, Borthwick had access to and was able to review the environmental engineering reports prepared about the presence of asbestos and lead in the District Schools.

14.     Defendant, Ken Norton ("Norton"), is a former School Board Member.  Norton was a member of the Scranton School Board in 2019.  Upon information and belief, Norton had access to and was able to review the environmental engineering reports prepared about the presence of asbestos and lead in the District Schools.

15.     Defendant, Paige Gebhardt Cognetti ("Cognetti"), is a former School Board Member. Cognetti was a member of the Scranton School Board between 2017-2018.  Upon information and belief, Cognetti had access to and was able to

review the environmental engineering reports prepared about the presence of asbestos and lead in the District Schools.

16.     Defendant, Robert Lesh ("Lesh"), is a former School Board Member. Lesh was a member of the Scranton School Board between 2016-2019. Upon information and belief, Lesh had access to and was able to review the environmental engineering reports prepared about the presence of asbestos and lead in the District Schools.

17.     Defendant, Mark McAndrew ("McAndrew"), is a former School Board Member. McAndrew was a member of the Scranton School Board between 2016-2019. Upon information and belief, McAndrew had access to and was able to review the environmental engineering reports prepared about the presence of asbestos and lead in the District Schools.

18.     Defendant, Robert Casey ("Casey"), is a former School Board Member. Casey was a member of the Scranton School Board between 2016-2019. Upon information and belief, Casey had access to and was able to review the environmental engineering reports prepared about the presence of asbestos and lead in the District Schools.

19.     Defendant, Paul Duffy ("Duffy"), is a former School Board Member. Duffy was a member of the Scranton School Board between 2016-2019. Upon information and belief, Duffy had access to and was able to review the

environmental engineering reports prepared about the presence of asbestos and lead in the District Schools.

20.     Defendant, Cy Douaihy ("Douaihy"), is a former School Board Member.  Douaihy was a member of the Scranton School Board between 2016-2017.  Upon information and belief, Douaihy had access to and was able to review the environmental engineering reports prepared about the presence of asbestos and lead in the District Schools.

21.     Defendant, Jim Timlin ("Timlin"), is a former School Board Member.  Timlin was a member of the Scranton School Board in 2016.  Upon information and belief, Timlin had access to and was able to review the environmental engineering reports prepared about the presence of asbestos and lead in the District Schools.

22.     Defendant, Robert Sheridan ("Sheridan"), is a former School Board Member.  Sheridan was a member of the Scranton School Board between 2016-2017.  Upon information and belief, Sheridan had access to and was able to review the environmental engineering reports prepared about the presence of asbestos and lead in the District Schools.

### III.     JURISDICTION AND VENUE

23.     This action is brought and actionable pursuant to 42 U.S.C. §§ 1983, 1985, and 1988, and the United States Constitution.

24.     This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 insomuch as this action arises under the Constitution and laws of the United States alleging violations of rights secured by the Constitution and federal statutes; 28 U.S.C. § 1343; an action to redress deprivations under color of state law; rights secured by the Constitution and laws of the United States; Constitution and laws of the Commonwealth of Pennsylvania; and pursuant to principles of pendent jurisdiction.

25.     The Court has personal jurisdiction over this lawsuit because both the Plaintiffs and Defendants reside within Lackawanna County.

26.     Venue is proper because Plaintiffs and Defendants both reside in the Lackawanna County and all the relevant events occurred herein.

## IV.     FACTUAL BACKGROUND

27.     At all relevant times, the District owned, possessed, controlled, and maintained the Schools, as well as Memorial Stadium and the Administrative Building, as well as additional schools located within the District which have since been closed and/or sold, including, but not limited to, Audubon Elementary.  The average age of the buildings housing the District's Schools is 67 years.

28.     At the end of January 2020, District officials first revealed widespread asbestos and lead issues affecting most of the Schools in the District.

29.     During the week of January 27, 2020, the District closed four (4)

schools – Northeast Intermediate, Prescott Elementary, Willard Elementary, and Robert Morris Elementary – due to the presence of airborne asbestos and lead in the drinking water.

30.     While most of those schools have re-opened without a complete explanation as to what was done to remediate them, Northeast Intermediate remains closed due to what has been reported as an environment so toxic that it is unsafe for human entry without appropriate safeguards.  As recently as two weeks ago, children, teachers and staff were in this building daily, for hours on end, without any knowledge of the clear and present dangers it posed to their health and safety.

## A.     Asbestos Exposure Hazards

31.     Asbestos refers to six naturally occurring minerals. Asbestos is considered an excellent electrical insulator due to its high resistant to fire, heat, electrical and chemical damage.  Asbestos, however, is a highly toxic airborne fibrous substance that causes a number of different incurable cancers and diseases to those that are exposed to it.

32.     By the 1960s, medical literature continually identified asbestos as a major carcinogen and environmental hazard, with over 200 publications describing asbestos hazards by the end of the 1960s. Notwithstanding this knowledge, and the knowledge of the harm that resulted from breathing in the dust from asbestos

products (including death), the manufacturers and installers of asbestos materials continued to sell and install these products without warning, reducing the dust, or substituting equally effective materials in place of the asbestos. Tragically, many companies had secured additional knowledge regarding the connection between asbestos and cancer as early as the 1930s. However, these companies altered research reports to hide these findings from the public.

33.    In 1970, Congress passed the Clean Air Act, which allowed the Environmental Protection Agency to regulate asbestos as a hazardous air pollutant. The EPA has designated asbestos as a Group A carcinogen.

34.    There are two general ways that asbestos becomes airborne. Products manufactured with asbestos can age, deteriorate or biodegrade over time. As asbestos crumbles with age, it can collapse and leave light dust of asbestos fibers surrounding it causing a natural disturbance. These fibers can be lifted on any slight draft or ventilation action and inhaled. Other natural forces like air friction can fray asbestos in pipe insulation, or direct contact with pests, like mice or rats, can tear into the material and expose the fibers.

35.    Manufacture, transport, installation and — more recently — the destruction of materials containing asbestos has become a primary cause for asbestos to be injected into the air. Demolition and renovation pose the most critical threat as workers unknowingly cut into workspaces or materials containing

asbestos without the proper hazard gear. Natural winds and ventilation systems used in the buildings while work is ongoing create exposure risk for disturbed and airborne asbestos fibers, causing them to be inhaled by a wider group than those who directly contacted the material.

36.     Inhalation of asbestos particles occurs when asbestos-containing materials decompose or are physically disturbed. The asbestos structures break apart easily, creating small, fibrous particles that are airborne. When inhaled, many of these particles become trapped in mucus layers and are later coughed up or swallowed.

37.     However, a significant portion of the fibers can become embedded within lung tissue because asbestos fibers pierce membranes and microscopic cell walls. Amphibole asbestos types have straight, needle-like fibers that are easier to inhale and more likely to become trapped in this way than wavy chrysotile fibers.

38.     Asbestos fibers trapped in the lungs irritate and scar lung tissue, causing the lungs to become stiff and making it difficult to breathe.  Eventually, lung tissue becomes so stiff that it can no longer contract or expand normally.

39.     Built-up asbestos fibers in body can also cause mesothelioma, a rare form of cancer in the lining of the lungs, chest, abdomen and heart.  The American Cancer Society ("ACS") warns that there is "no clear safe level of asbestos

exposure in terms of mesothelioma risk."[1] The ACS also warns that "[m]esotheliomas typically take a long time to develop. The time between first exposure to asbestos and diagnosis of mesothelioma is usually 30 years or more. Unfortunately, the risk of mesothelioma does not drop with time after exposure to asbestos. The risk appears to be life long."[2]

40.     The National Cancer Institute's studies have also suggested an association between asbestos exposure and gastrointestinal and colorectal cancers, as well as an elevated risk for cancers of the throat, kidney, esophagus and gallbladder.

41.     The Mayo Clinic has warned that the "effects of long-term exposure to asbestos typically don't show up until 10 to 40 years after initial exposure. Symptoms can vary in severity."[3]

42.     Screening for rare diseases such as mesothelioma is typically not included in a routine physical examination and, therefore, the patient must first know that they have been exposed and then request routine diagnostic testing. This testing may, or may not, be covered by the patient's health insurance

---

[1] https://www.cancer.org/cancer/cancer-causes/asbestos.html (last visited Feb. 3, 2020).

[2] *Id*.

[3] *See* https://www.mayoclinic.org/diseases-conditions/asbestosis/symptoms-causes/syc-20354637 (last visited February 3, 2020).

depending on their plan and circumstance.

**B.**     **The District's Knowledge About Asbestos in Schools**

43.     Federal law and Environmental Protection Agency regulations require the District to inspect its Schools for asbestos-containing building material, prepare management plans, and take action to prevent or reduce asbestos hazards.

44.     As early as July 1988, the District and its officials conducted asbestos inspections throughout the District pursuant to the Asbestos Hazard Emergency Response Act ("AHERA"), which, at that time, revealed widespread and pervasive asbestos problems in various Schools necessitating remediation.

45.     The AHERA provides hazard ranks and removal priorities based on the condition of the asbestos, as follows:

a.     **Hazard Rank 7; Removal Priority 1**; category of significantly damaged; Response actions required by AHERA include evacuating or restricting the areas if needed, removing the asbestos (or enclosing or encapsulating it if sufficient to contain fibers), repairing thermal system insulation if feasible and safe, and requiring operations and maintenance for all asbestos-containing building materials ("ACBM");

b.     **Hazard Rank 6; Removal Priority 2**; category of damaged with potential for significant damage; Response actions required by AHERA include evacuating or restricting the areas if needed, removing, enclosing, encapsulating, or repairing to correct damage, taking steps to reduce potential for disturbance, and requiring operations and maintenance for all ACBM;

c.   **Hazard Rank 5; Removal Priority 3**; category of damaged with potential for additional damage; Response actions required by AHERA include removing, enclosing, encapsulating, or repairing to correct damage, and requiring operations and maintenance for all ACBM;

d.   **Hazard Rank 4; Removal Priority 4**; category of damaged with low potential for additional damage; Response actions required by AHERA include removing, enclosing, encapsulating, or repairing to correct damage, and requiring operations and maintenance for all ACBM;

e.   **Hazard Rank 3; Removal Priority 5**; category of good with potential for significant damage; Response actions required by AHERA include evacuating or restricting the area if needed, taking steps to reduce potential for disturbance, and requiring operations and maintenance for all ACBM;

f.   **Hazard Rank 2; Removal Priority 6**; category of good with potential for damage; Response actions required by AHERA include taking steps to reduce potential for damage, and requiring operations and maintenance for all ACBM; and

g.   **Hazard Rank 1; Removal Priority 7**; category of good with low potential for disturbance; Response actions required by AHERA include requiring operations and maintenance for all ACBM.

46.   More than 30 years after the 1988 inspections, and following additional testing in 2019, the District for the first time in January 2020 revealed the existence of asbestos in all District Schools, except the newest buildings – Scranton High School, Whittier Elementary, Tripp Elementary, and Kennedy

Elementary.

47.   This was only after the District again conducted asbestos inspections in 2019, the results of which were revealed in 2020, and which are discussed hereinbelow.  Those results showed that there are more than 950 areas in District Schools with asbestos, and 202 areas that need urgent attention and remediation due to the unsafe and hazardous levels.[4]

48.   Asbestos inspection reports reveal the dangerous building material is present in flooring tiles, ceilings, walls, and insulation throughout Schools within the District, and in some instances, previously abated asbestos was allowed to remain unsecured in plastic bags located within areas of the School.

49.   However, even between the 1988 inspections and the 2019 inspections, it has come to light that the District's environmental engineers, Guzek Associates ("Guzek"), identified asbestos problems in various Schools as part of a 2016 inspection, including, but not limited to, the need to remove bags of asbestos leftover from an abatement project that sat in the basement of West Scranton High School.

50.   The 2016 Guzek report contained various recommendations, including

---

[4] It is not known at this time whether asbestos tests were ever performed at Lincoln Jackson Academy, which a behavioral school, and/or Monticello School, which is a public, center-based program for school-age special education students with Autism and Emotional Disturbance, insomuch as the District's public website does not provide any test results or other reports on these two schools.

a remediation plan. The report contained various "do's" and "do nots" for the District administrators to follow and called for re-evaluation every 6 months.

51.     Guzek ran additional testing in 2018 and 2019 and reported the same results as in its 2016 testing and "suspected that school officials were not fixing the problem."[5]

52.     Specifically, as pictured below, in October 2018 District administrators received photos of the deteriorating conditions inside Northeast Intermediate. No one informed the people in the building — or the maintenance workers repairing it — that the walls and ceilings inside could contain asbestos. Likewise, and just down the hallway, dust from the water-damaged ceiling covered books and cabinets. A piece of the ceiling even fell next to a student sitting at a desk. Despite the conclusions of the 2016 Guzek Report and threat to the health and safety of the teachers, staff, and children, no one from the District or School Board bothered to act until January 2020.

---

[5] https://wnep.com/2020/01/28/asbestos-unsafe-lead-levels-found-in-scranton-schools/ (last visited February 3, 2020)

**Subject: Room 334 &337**



**Conditions inside Rooms 334 and 337 at Northeast in October 2018**

53.     These problems were not just limited to Northeast Intermediate.   As reported in the local news media, "[t]eachers in older buildings recalled finding pieces of ceiling on student desks and dust covering books. Those teachers wonder[] about their own health, after working in the same rooms for a decade or

17

more."[6]   As reported, some of those teachers, upon learning of the widespread issues, plan to seek medical evaluation, including chest x-rays and CT scans.[7] Whether their insurance coverage will cover such testing remains unknown.

### 1.    Northeast Intermediate Asbestos

54.    In August 2019, Guzek performed a 3-year asbestos reinspection of Northeast Intermediate and prepared a report.  A copy of Guzek's 2019 Northeast Intermediate report is attached hereto as **Exhibit "A"** and incorporated herein by reference.

55.    The report identified at least forty-three (43) specific locations containing asbestos with an AHERA assessment of "damaged" or "significantly damaged," with AHERA hazard ratings ranging between 2-6, and AHERA removal priority ratings between 2-6.

56.    For example, the ground floor wood shop/original speech and drama room, received a high AHERA hazard rating of 6 and a high AHERA removal priority rating of 2, along with the following directives: "Plaster tested positive in other areas.  Plaster in this area should be treated as ACBM or be sampled thoroughly in many areas before disturbance." The ground floor special education

---

[6] https://www.thetimes-tribune.com/news/frustrated-parents-staff-speak-out-as-northeast-closed-indefinitely-1.2590779 (last visited February 4, 2020).

[7] https://www.thetimes-tribune.com/news/teachers-maintenance-workers-say-scranton-leaders-failed-to-notify-anyone-about-asbestos-risk-1.2591264 (last visited February 4, 2020).

room received a high AHERA hazard rating of 6 and a high AHERA removal priority rating of 2.  Additionally, second-floor rooms 231, 233, and 234, received a high AHERA hazard rating of 6 and a high AHERA removal priority rating of 2, along with the following directives: "Significantly damaged due to water.  Repair."

### 2.    Prescott Elementary Asbestos

57.    Guzek's 2019 testing at Prescott Elementary and identified at least six (6) specific locations containing asbestos with an AHERA assessment of "damaged" or "significantly damaged," with AHERA hazard ratings ranging between 4-7, and AHERA removal priority ratings between 1-4.  A copy of Guzek's 2019 Prescott Elementary report is attached hereto as **Exhibit "B"** and incorporated herein by reference.

58.    Specifically, at Prescott, the second-floor main corridor received the highest AHERA hazard rating of 7 and the highest AHERA removal priority rating of 1, along with an immediate order of removal of the significantly damaged and hazardous asbestos.

### 3.    McNichols Plaza Elementary Asbestos

59.    Guzek's 2019 reinspection of McNichols Plaza Elementary identified at least two (2) specific locations containing asbestos with an AHERA assessment of "damaged" or "significantly damaged," with AHERA hazard ratings ranging between 2-6, and AHERA removal priority ratings between 2-6.  A copy of

Guzek's 2019 McNichols Plaza Elementary report is attached hereto as **Exhibit "C"** and incorporated herein by reference.

60.     The Guzek report identified the gym office, which received a high AHERA hazard rating of 6 and a high AHERA removal priority rating of 2, along with the following directives: "Deep gouges in floor tile.  Floor tile should be removed.  Mastic assumed."

### 4.     South Scranton Intermediate Asbestos

61.     Guzek's 2019 reinspection of South Scranton Intermediate identified at least forty-eight (48) specific locations containing asbestos with an AHERA assessment of "damaged" or "significantly damaged," with AHERA hazard ratings ranging between 2-6, and AHERA removal priority ratings between 2-6.  A copy of Guzek's 2019 South Scranton Intermediate report is attached hereto as **Exhibit "D"** and incorporated herein by reference.

62.     Specifically, the Guzek Report identified ground floor cafeterias A and B and gave them the high AHERA hazard rating of 6 and a high AHERA removal priority rating of 2.

63.     In addition, second-floor rooms 211 and 211A received a high AHERA hazard rating of 5 and a high AHERA removal priority rating of 3, along with the following directives: "Room 211, insulation damaged and exposed."

64.     Likewise, second-floor room 206 received a high AHERA hazard

rating of 6 and a high AHERA removal priority rating of 2, along with the following directives: "Insulation is exposed and deteriorating" while the third-floor janitors' closet, received a high AHERA hazard rating of 6 and a high AHERA removal priority rating of 2, along with the following directives: "Remove/encapsulate fitting remnants in wall and floor."

### 5.   Adams Elementary Asbestos

65.   Guzek's 2019 reinspection of Adams Elementary identified at least five (5) specific locations containing asbestos with an AHERA assessment of "damaged" or "significantly damaged," with AHERA hazard ratings ranging between 5-6, and AHERA removal priority ratings between 2-3.   A copy of Guzek's 2019 Adams Elementary report is attached hereto as **Exhibit "E"** and incorporated herein by reference.

66.   The first-floor girls' restroom received a high AHERA hazard rating of 6 and a high AHERA removal priority rating of 2, along with the following directives: "Many fittings are destroyed and loose debris floor."

67.   The basement custodian area also received a high AHERA hazard rating of 5 and a high AHERA removal priority rating of 3, along with the following directives: "Remove approx. 25-30 LF of damaged pipe insulation at and in pit area.  3-4 fittings are significantly damaged in pit area.  Loose debris in pit area and in trench."

6.      **Sumner Elementary Asbestos**

68.     Guzek's 2019 reinspection of Sumner Elementary and identified at least two (2) specific locations containing asbestos with an AHERA assessment of "damaged," with AHERA hazard ratings ranging between 4-5, and AHERA removal priority ratings between 3-4.   A copy of Guzek's 2019 Sumner Elementary report is attached hereto as **Exhibit "F"** and incorporated herein by reference.

69.     At Sumner, the basement boiler room received a high AHERA hazard rating of 5 and a high AHERA removal priority rating of 3, along with the following directives: "Material is becoming loose.  Remove."

7.      **Bancroft Elementary Asbestos**

70.     Guzek's 2019 reinspection of Bancroft Elementary identified at least nine (9) specific locations containing asbestos with an AHERA assessment of "damaged" or "significantly damaged," with AHERA hazard ratings ranging between 2-7, and AHERA removal priority ratings between 1-6.   A copy of Guzek's 2019 Bancroft Elementary report is attached hereto as **Exhibit "G"** and incorporated herein by reference.

71.     At Bancroft, the first-floor girls' restroom received the highest AHERA hazard rating of 7 and the highest AHERA removal priority rating of 1, along with the following directives: "Remove/Restrict Access.  Door was sealed

22

during last surveillance.  Door is now open."

72.    The second-floor boys' restroom received the highest AHERA hazard rating of 7 and the highest AHERA removal priority rating of 1, along with an immediate order to remove the significantly damaged and hazardous asbestos.

73.    And, the second-floor janitors closet right next to the boys' restroom received a high AHERA hazard rating of 6 and a high AHERA removal priority rating of 2, along with the following directives: "tile under sink with heavy damage, others cracking and chipping.  Remove."

### 8.    West Scranton High School Asbestos

74.    Guzek's 2019 reinspection of West Scranton High School identified at least twenty-six (26) specific locations containing asbestos with an AHERA assessment of "damaged" or "significantly damaged," with AHERA hazard ratings ranging between 4-7, and AHERA removal priority ratings between 1-5.  A copy of Guzek's 2019 West Scranton High School report is attached hereto as **Exhibit "H"** and incorporated herein by reference.

75.    At West Scranton High School, the second-floor janitors' closet received the highest AHERA hazard rating of 7 and the highest AHERA removal priority rating of 1, along with an immediate order to remove the significantly damaged and hazardous asbestos.

76.    The attic/penthouse received a high AHERA hazard rating of 5 and a

high AHERA removal priority rating of 3, along with an immediate order to remove and restrict access to the significantly damaged and hazardous asbestos and directives in bold red lettering directing as follows:

> **RESTRICT ACCESS/REMOVE. INTACT INSULATION GENERALLY IN GOOD CONDITION. ABATED MATERIAL FOUND IN APPROX. 20-25 BAGS. THESE BAGS NEED TO BE REMOVED IMMEDIATELY. IT WAS REPORTED THAT MULTIPLE PILES OF LOOSE ASBESTOS DEBRIS WAS REMOVED IN THE WINTER OF 2017. ADDITIONAL LOOSE DEBRIS STILL EXISTS IN ATTIC AREA. THE DISTRICT REPORTED LOOSE DEBRIS ON FLOOR WAS REMOVED 11/2019. THOROUGHLY CLEAN UP OF ATTIC AREA. BLOWN IN INSULATION WAS ADDED SINCE LAST INSPECTION, UNKNOWN IF DEBRIS AND DAMAGED ITEMS WERE REPAIRED OR REMOVED.**

77.    West Scranton High School's basement boiler room received a high AHERA hazard rating of 6 and a high AHERA removal priority rating of 2, along with the following directives: "Bags need to be removed immediately. District reported insulation bags on floor were removed 11/2019."

78.    The school's basement stage storage area received a high AHERA hazard rating of 6 and a high AHERA removal priority rating of 2, along with the following directives: "Significant damage to insulation, needs to be removed."

79.    Lastly, the first-floor boys' restroom next to room 106 received a high AHERA hazard rating of 6 and a high AHERA removal priority rating of 2, along

with the following directives: "25 LF of water damaged insulation.   Insulation should be removed.   Panels appear to be layered between floor chases and have heavy damage."

### 9.    Robert Morris Elementary Asbestos

80.    Guzek's 2019 reinspection of Robert Morris Elementary identified at least twenty-eight (28) specific locations containing asbestos with an AHERA assessment of "damaged" or "significantly damaged," with AHERA hazard ratings ranging between 4-6, and AHERA removal priority ratings between 2-4.  A copy of Guzek's 2019 Robert Morris Elementary report is attached hereto as **Exhibit "I"** and incorporated herein by reference.

81.    For example, the basement boiler room received a high AHERA hazard rating of 6 and a high AHERA removal priority rating of 2, along with the following directives: "Remove."

82.    First-floor room 102 received a high AHERA hazard rating of 6 and a high AHERA removal priority rating of 2, along with the following directives: "Remove."

83.    First-floor rooms 103, 106, 107, and 108 received a high AHERA hazard rating of 6 and a high AHERA removal priority rating of 2, along with the following directives: "Remove, fittings have high potential for disturbance."

84.    Second-floor rooms 201, 204, 207, and 208 received a high AHERA

hazard rating of 6 and a high AHERA removal priority rating of 2, along with the following directives: "Remove, fittings have high potential for disturbance."

85.    Additionally, the second-floor girls' and boys' restrooms received a high AHERA hazard rating of 6 and a high AHERA removal priority rating of 2, along with the following directives: "Loose debris on floor."

### 10.    Willard Elementary Asbestos

86.    Guzek's 2019 reinspection of Willard Elementary identified at least eighteen (18) specific locations containing asbestos with an AHERA assessment of "damaged" or "significantly damaged," with AHERA hazard ratings ranging between 2-6, and AHERA removal priority ratings between 2-6.   A copy of Guzek's 2019 Willard Elementary report is attached hereto as **Exhibit "J"** and incorporated herein by reference.

87.    For example, the basement girls' restroom received a high AHERA hazard rating of 6 and a high AHERA removal priority rating of 2, along with the following directives: "Remove insulation."

88.    The basement multipurpose area also received a high AHERA hazard rating of 5 and a high AHERA removal priority rating of 3, along with the following directives: "Water leak in ceiling.  Encapsulate all holes and/or broken areas."

### 11.   West Scranton Intermediate Asbestos

89.   Guzek's 2019 reinspection of West Scranton Intermediate identified at least six (6) specific locations containing asbestos with an AHERA assessment of "damaged," with AHERA hazard ratings ranging between 2-5, and AHERA removal priority ratings between 3-6.   A copy of Guzek's 2019 West Scranton Intermediate report is attached hereto as **Exhibit "K"** and incorporated herein by reference.

90.   As just one example, the first-floor gym passageway received a high AHERA hazard rating of 5 and a high AHERA removal priority rating of 3, along with the following directives: "Remove and replace 22-24 cracked/broken floor tiles."

### 12.   Whittier Elementary (Annex) Asbestos

91.   Guzek's 2019 reinspection of Whittier Elementary (Annex) identified at least four (4) specific locations containing asbestos with an AHERA assessment of "damaged" or "significantly damaged," with AHERA hazard ratings ranging between 3-6, and AHERA removal priority ratings between 2-5.   A copy of Guzek's 2019 Whittier Elementary report is attached hereto as **Exhibit "L"** and incorporated herein by reference.

92.   Just one example from Whittier is second-floor room 210, which received a high AHERA hazard rating of 6 and a high AHERA removal priority

rating of 6, along with the following directives: "Open hole in closet ceiling."

### 13.    Neil Armstrong Elementary Asbestos

93.    Guzek's 2019 reinspection of Neil Armstrong Elementary identified at least seven (7) specific locations containing asbestos with an AHERA assessment of "damaged," with AHERA hazard ratings ranging between 2-5, and AHERA removal priority ratings between 3-6.   A copy of Guzek's 2019 Armstrong Elementary report is attached hereto as **Exhibit "M"** and incorporated herein by reference.

94.    Troubled locations at Armstrong include the main level common areas, which received a high AHERA hazard rating of 5 and a high AHERA removal priority rating of 3; the lower level storage area, which received a high AHERA hazard rating of 5 and a high AHERA removal priority rating of 3; as well as the lower level gym office, PTA supply room, and PTA hallway office, which all received a high AHERA hazard rating of 5 and a high AHERA removal priority rating of 3.

### 14.    Administrative Building Asbestos

95.    Guzek's 2019 reinspection of the District Administrative Building identified at least four (4) specific locations containing asbestos with an AHERA assessment of "damaged" or "significantly damaged," with AHERA hazard ratings ranging between 4-6, and AHERA removal priority ratings between 2-4.   A copy

of Guzek's 2019 Administrative Building report is attached hereto as **Exhibit "N"** and incorporated herein by reference.

96.     At the Administrative Building, the basement mechanical room received a high AHERA hazard rating of 5 and a high AHERA removal priority rating of 3, along with the following directives: "12 damaged fittings."

97.     Additionally, the steam line room received a high AHERA hazard rating of 6 and a high AHERA removal priority rating of 2, along with the following directives: "Remove loose debris in trench."

## C.     Lead Exposure Hazards

98.     Lead can enter drinking water when plumbing materials that contain lead corrode, especially where the water has high acidity or low mineral content that corrodes pipes and fixtures. The most common sources of lead in drinking water are lead pipes, faucets, and fixtures. Lead pipes are more likely to be found in older cities and buildings built before 1986. Among properties without lead service lines, the most common problem is with brass or chrome-plated brass faucets and plumbing with lead solder.

99.     The Safe Drinking Water Act requires the EPA to determine the level of contaminants in drinking water at which no adverse health effects are likely to occur with an adequate margin of safety. The EPA has set the maximum contaminant level goal for lead in drinking water at *zero* because lead is a toxic

metal that can be harmful to human health even at low exposure levels. Lead is persistent, and it can bioaccumulate in the body over time.

100.   Young children, infants, and fetuses are particularly vulnerable to lead because the physical and behavioral effects of lead occur at lower exposure levels in children than in adults. A dose of lead that would have little effect on an adult can have a significant effect on a child.

101.   In children, low levels of exposure have been linked to damage to the central and peripheral nervous system, learning disabilities, shorter stature, impaired hearing, and impaired formation and function of blood cells.

102.   Lead can accumulate in human bodies over time, where it is stored in bones along with calcium. During pregnancy, lead is released from bones as maternal calcium and is used to help form the bones of the fetus. This is particularly true if a woman does not have enough dietary calcium. Lead can also cross the placental barrier exposing the fetus to lead. This can result in serious effects to the mother and her developing fetus, including reduced growth of the fetus and premature birth.  Lead can also be transmitted to infants through breast milk.

103.   For adults, generally, lead exposure can cause cardiovascular effects, increased blood pressure and incidence of hypertension; decreased kidney function; and reproductive problems (in both men and women).

**D.**     **The District's Knowledge About Lead in Drinking Water**

104.   In 2019, Guzek performed evaluations of lead in drinking water at the Schools within the District.  A copy of Guzek's "Lead in Water Issues" summary spreadsheet is attached hereto as **Exhibit "O"** and incorporated herein by reference.

105.   In January 2020, the District for the first time turned off and/or placed warnings at thirty-eight (38) sinks and fountains across the District, all of which contained lead readings above the action level of 0.015 mg/l, including at Armstrong Elementary, Bancroft Elementary, McNichols Plaza Elementary, Northeast Intermediate, Prescott Elementary, Scranton High School, the former Scranton Memorial Stadium, Whittier Elementary (Annex), and West Scranton Intermediate.

106.   The District first tested its water in 2016, and in June of that year the District announced it had shut off eight (8) water fountains and eleven (11) sinks after test results revealed elevated lead levels in the water. District officials planned to replace the brass or bronze fittings in the affected locations in summer 2016, but upon information and belief, the District failed to act.

107.   In January 2019, Guzek urged the District to shut off more than two dozen faucets and sinks in Schools throughout the District, but many of those fixtures remained in operation until January 2020, when tests again revealed unsafe

lead levels.

108.   Rather than heed Guzek's warnings or immediately remediate the sinks and their fixtures, the District elected to hang signs (as pictured below) warning teachers, staff and students not to drink or use water for cooking from certain sinks. The problem with the signs, however, was that they failed to adequately explain or warn about the serious health consequences associated with using the water rendering them virtually useless.



1.    **Armstrong Elementary Lead**

109.   Guzek's 2019 lead testing at Armstrong revealed the following elevated lead levels over the actionable level of 0.015 mg/l:

  a.    Health room sink; lead level 0.016; appropriate signage/labeling on 1/9/20; sink taken out of service on 1/16/20;

  b.    Room 124 sink; lead level 0.215 (*a staggering 14 times the lead action level*); appropriate signage/labeling on 1/9/20; sink taken out of service on 1/16/20;

  c.    Room 127 sink; lead level 0.101 (*a staggering 6 times the lead action level*); appropriate signage/labeling on 1/9/20; sink taken out of service on 1/16/20;

  d.    Basement coat room left sink; lead level 0.205 (*a staggering 13 times the lead action level*); appropriate signage/labeling on 1/9/20; sink taken out of service on 1/16/20; and

  e.    Basement coat room right sink; lead level 0.2 (*a staggering 13 times the lead action level*); appropriate signage/labeling on 1/9/20; sink taken out of service on 1/16/20.

2.    **Bancroft Elementary Lead**

110.   Guzek's 2019 lead testing at Bancroft revealed the following elevated

lead levels over the actionable level of 0.015 mg/l:

    a.    Room 101 sink; lead level 0.017; report predates current administration; unsure of action plan at that time; advised on 1/9/20 to check 2018 report by Guzek for compliance; this prompted action, immediate review, and compliance;

    b.    Health room 212 sink; lead level 0.03 (*2 times the lead action level*); action taken upon receiving test results; appropriate signage posted on 1/9/20; sink turned off on 1/17/20;

    c.    Room 211 sink; lead level 0.022; action taken upon receiving test results; appropriate signage posted on 1/9/20; sink turned off on 1/17/20; and

    d.    Cafeteria left sink; lead level 0.018; appropriate signage posted on 1/9/20; left message for principal on 1/16/20; spoke to principal on 1/17/20.

**3.    McNichols Plaza Elementary Lead**

111.  Guzek's 2019 lead testing at McNichols revealed the following elevated lead levels over the actionable level of 0.015 mg/l:

    a.    Boys' gym bathroom fountain; lead level 0.056 (*nearly 4 times the lead action level*); report predates current administration; unsure of action plan at that time; advised on 1/9/20 to check

2018 report by Guzek for compliance; this prompted action, immediate review, and compliance;

b.     4th grade yellow wall sink; lead level 0.016; appropriate signage posted on 1/9/20; sink was already turned off when inspected on 1/17/20;

c.     Computer lab right sink; lead level 0.093 (*a staggering 6 times the lead action level*); appropriate signage posted on 1/9/20; sink was already turned off when inspected on 1/17/20;

d.     Girls' gym bathroom left sink; lead level 0.052 (*over 3 times the lead action level*); appropriate signage posted on 1/9/20; sink was already turned off when inspected on 1/17/20;

e.     1st grade sink; lead level 0.607 (*a staggering 40 times the lead action level*); appropriate signage posted on 1/14/20; unable to access the shutoff valve; District carpenter and building maintenance contacted on 1/21/20 about getting the sink turned off; sink has been turned off; and

f.     Library sink; lead level 0.0149; notified by Guzek Associates on 1/20/20 that the lead level was not above the required action level, but close enough that the sink should be taken out of service or labeled; it was taken out of service on 1/21/20.

### 4. Northeast Intermediate Lead

112. Guzek's 2019 lead testing at Northeast Intermediate revealed the following elevated lead levels over the actionable level of 0.015 mg/l:

      a.    Home economics room sink 1; lead level 0.017; appropriate signage posted on 1/9/20; sink was already turned off when inspected on 1/17/20;

      b.    Home economics room sink 4; lead level 0.015; appropriate signage posted on 1/9/20; sink was already turned off when inspected on 1/17/20;

      c.    Home economics room sink 5; lead level 0.027 (***nearly 2 times the lead action level***); appropriate signage posted on 1/9/20; sink was already turned off when inspected on 1/17/20; and

      d.    Basement cafeteria; lead level 0.021 (***nearly 1.5 times the lead action level***); appropriate signage posted on 1/14/20.

### 5. Prescott Elementary Lead

113. Guzek's 2019 lead testing at Prescott Elementary revealed the following elevated lead levels over the actionable level of 0.015 mg/l:

      a.    Room 101 fountain; lead level 0.018 (December 2018 test result); 0.026 (December 2019 test result) (***nearly 2 times the lead action level***); report predates current administration;

unsure of action plan at that time; advised on 1/9/20 to check 2018 report by Guzek for compliance; this prompted action, immediate review, and compliance; fountain was tested again in December 2019, still showing an elevated lead level of 0.026;

b.      Room 218 sink; lead level 0.021 (***nearly 1.5 times the lead action level***); appropriate signage posted 1/14/20; sink turned off on 1/17/20;

c.      Room 204 sink; lead level 0.022 (***nearly 1.5 times the lead action level***); appropriate signage posted 1/14/20; sink turned off on 1/17/20;

d.      Room 205 fountain; lead level 0.079 (***a staggering 5 times the lead action level***); appropriate signage posted 1/14/20; sink turned off on 1/17/20;

e.      Room 205 sink; lead level 0.056 (***nearly 4 times the lead action level***); appropriate signage posted 1/14/20; sink turned off on 1/17/20;

f.      Room 104 sink; lead level 0.18 (***a staggering 12 times the lead action level***); appropriate signage posted on 1/14/20; despite attempts, unable to turn off the sink on 1/17/20; plumbing contractor contacted on 1/21/20 to get the sink turned off;

contractor will be shutting off the main water supply to the school to get a new valve installed after school on 1/31/20; this sink will then be removed from service; and

g.      Basement health room sink; lead level 0.045 (*3 times the lead action level*); appropriate signage posted on 1/14/20; unable to shut off sink on 1/17/20; plumbing contractor contacted on 1/21/20 about getting the sink turned off; sink successfully removed from service on 1/21/20.

## 6.      Memorial Stadium Lead

114.   Guzek's 2019 lead testing at Memorial Stadium revealed the following elevated lead levels over the actionable level of 0.015 mg/l:

a.      Concession stand sink; lead level 0.128 (*a staggering 8.5 times the lead action level*); appropriate signage posted on 1/14/20; sink turned off on 1/17/20;

b.      Visitors stand, west locker room cooler fill sink; lead level 0.0577 (*nearly 4 times the lead action level*); appropriate signage posted on 1/14/20; sink turned off on 1/17/20; and

c.      Visitors stand locker room, coaches' office restroom sink; lead level 0.0551 (*nearly 4 times the lead action level*); appropriate signage posted on 1/14/20; sink turned off on 1/17/20.

**7.     Whittier Elementary Lead**

115.   Guzek's 2019 lead testing at Whittier Elementary revealed the following elevated lead levels over the actionable level of 0.015 mg/l:

> a.     First-floor left kitchen sink; lead level 0.0162; appropriate signage posted on 1/14/20.

**8.     West Scranton Intermediate Lead**

116.   Guzek's 2019 lead testing at West Scranton Intermediate revealed the following elevated lead levels over the actionable level of 0.015 mg/l:

> a.     Auditorium fountain; lead level 0.017; report predates current administration; unsure of action plan at that time; advised on 1/9/20 to check 2018 report by Guzek for compliance; this prompted an immediate review for compliance; appropriate action was already taken and signage was already posted when inspected on 1/9/20;
>
> b.     Medical office exam room sink; lead level 0.029 (***nearly 2 times the lead action level***); report predates current administration; unsure of action plan at that time; advised on 1/9/20 to check 2018 report by Guzek for compliance; this prompted action, immediate review, and compliance; signage was already posted when inspected on 1/9/20; sink turned off

on 1/17/20;

c.     Main office sink; lead level 0.028 (***nearly 2 times the lead
       action level***); report predates current administration; unsure of
       action plan at that time; advised on 1/9/20 to check 2018 report
       by Guzek for compliance; this prompted action, immediate
       review, and compliance; signage was already posted when
       inspected on 1/9/20; unable to shut off on 1/17/20, as the sink
       does not have a shutoff valve; students do not have access;

d.     Band room, girls' (faculty) restroom sink; lead level 0.569 (***a
       staggering 38 times the lead action level***); appropriate signage
       posted on 1/14/20; it was taken out of service on 1/21/20; and

e.     Band room sink; lead level 0.0798 (***over 5 times the lead action
       level***); appropriate signage posted on 1/14/20; on 1/17/20, the
       cold side was turned off; the hot side could not be turned off as
       the shutoff valve isn't accessible; plumbing contractor was
       contacted on 1/21/20 about getting the hot side turned off;
       contractor found a shut off valve in the ceiling and was able to
       turn off.

## V.  CLASS ACTION ALLEGATIONS

117.   The District and the Defendant School Board Members knowingly allowed the presence of asbestos and lead in unsafe levels within its Schools for an extended period.

118.   The District and the Defendant School Board Members were and are aware that asbestos and lead are hazardous substances, and that exposure to asbestos and lead poses health risks to persons exposed to those hazardous substances.

119.   The District and the Defendant School Board Members did not notify its students, parents, employees, and independent contractors of the presence of asbestos and lead in unsafe levels until January 2020.

120.   The District and the Defendant School Board Members did not begin to take *any* steps to properly and safely rectify the asbestos and lead problems until January 2020 despite knowledge of the problems at least prior to that date.

121.   As such, District students, employees, and other persons permitted to be in District Schools were exposed to asbestos and lead in unsafe levels for an extended and indefinite period.

122.   Plaintiffs bring their claims as a class action pursuant to Rule 23(a), (b)(1), (b)(2) and (b)(3) on behalf of the class defined below:

> All persons who attend or attended Schools within the District as students, all parents and/or legal guardians of persons who

attend or attended Schools within the District as students, all persons who work or worked in Schools within the District as employees; and all persons who are allowed or were allowed to be present in the Schools within the District from 2016 to the present.

Excluded from the Class are those who only attended or worked at the new Scranton High School, Whittier Elementary, Tripp Elementary, and Kennedy Elementary during the respective Class period; the individual District Board Member Defendants; and anyone who has already manifested a disease a result of exposure to asbestos or lead in the District Schools.

### Numerosity

123.   Although the exact number of Class Members is uncertain, it is believed that annual enrollment in the Scranton School District is 9,791 students, 698 teachers, and 425 non-teaching staff members, rendering the Class so numerous that the joinder of all members is impracticable.

### Commonality

124.   There are numerous questions of law and fact common to Plaintiffs and the Class, including the following:

    a.   Whether Class Members were exposed to asbestos and lead in unsafe levels in violation of the United States laws and Constitution;

    b.   Whether Class Members were exposed to asbestos and lead in unsafe levels in violation of the Commonwealth of Pennsylvania laws and Constitution;

    c.   Whether Class Members are entitled to the relief requested herein.

## Typicality

125.   The claims of Plaintiffs are typical of the claims of the Class Members in that the representative Plaintiffs, like all Class Members, was permitted to be present upon the Schools within the District.

## Fair and Adequate Representation

126.   Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs has retained counsel who is experienced in class-action litigation. Plaintiffs has no interests which are adverse to, or in conflict with, other Class Members.

## Equitable and Injunctive Relief

127.   Rule 23(b)(1) certification is appropriate in this action because prosecuting separate actions by individual class members may result in inconsistent or varying adjudications that would establish incompatible standards of conduct for the District.

128.   Rule 23(b)(2) certification is also appropriate because the District has generally refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate for the class as a whole.

## The Predominance Requirement

129.   Rule 23(b)(3) certification is appropriate because the questions of law

and fact common to the Class Members predominate over any questions of fact or law which may affect only individual members.

130.   Indeed, common questions predominate in an action for asbestos and lead exposure by current and former students and employees while attending and/or working at the District's Schools.   The Plaintiffs and Class Members' demands for future medical monitoring is based on the common and overriding fact of a threshold level of asbestos and lead exposure caused by a single source, namely the District's failure to act and remediate after notification in as early as 2016.

## Superiority

131.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy.   Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Moreover, absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.

## VI. REQUESTS FOR RELIEF

### <u>COUNT I</u>
### 42 U.S.C. §§ 1983 & 1988
### DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION
### <u>STATE-CREATED DANGER</u>

132.    The above paragraphs are incorporated herein by reference.

133.    Plaintiffs and the Class Members are substantially more vulnerable to physical injuries and/or diseases resulting from exposure to asbestos and lead than they would have been in the absence of intervention by the District and the Defendant School Board Members.

134.    The harm and risk of physical injuries and/or diseases to Plaintiffs and the Class Members was foreseeable.

135.    The District's and the Defendant School Board Members' actions, inactions, and/or deliberate indifference in allowing the presence of asbestos and lead in unsafe levels within its Schools for an extended period of time, in failing to inform its students, parents, employees, and independent contractors of the presence asbestos and lead in unsafe levels until January 2020, and in failing to begin to take any steps to rectify the asbestos and lead problems until January 2020, shocks the conscience.

136.    A relationship existed and/or exists between the District and the Defendant School Board Members and the Plaintiffs and the Class Members such

that Plaintiffs and the Class Members were foreseeable victims of the Defendants' actions and/or inactions.

137.   The District and the Defendant School Board Members used their power and authority in a way that created a danger to Plaintiffs and the Class Members and rendered the Plaintiffs and the Class Members substantially more vulnerable to physical injuries and/or diseases from exposure to asbestos and lead.

138.   The District and the Defendant School Board Members took the affirmative action and made the affirmative decision to allow the presence of asbestos and lead in unsafe levels within its Schools for an extended period of time.

139.   The District and the Defendant School Board Members took the affirmative action and made the affirmative decision not to inform its students, parents, and employees of the presence asbestos and lead in unsafe levels until January 2020.

140.   The District's and the Defendant School Board Members' affirmative actions and decisions created a danger to Plaintiffs and the Class Members and rendered the Plaintiffs and the Class Members more vulnerable than if the District had not taken the aforesaid affirmative actions.

## COUNT II
## 42 U.S.C. §§ 1983 & 1988
## MEDICAL MONITORING AND ESTABLISHMENT OF FUND FOR
## FINANCIAL EXPENSES FOR INCREASED
## MEDICAL MONITORING

141.   The above paragraphs are incorporated herein by reference.

142.   Plaintiffs and the Class Members were exposed to hazardous substances, specifically asbestos and lead, in greater than normal levels for an extended and indefinite period of time.

143.   The District and the Defendant School Board Members were negligent in allowing the presence of asbestos and lead in unsafe levels within its Schools for an extended period of time, in failing to inform its students, parents, employees, and independent contractors of the presence asbestos and lead in unsafe levels until January 2020, and in failing to begin to take any steps to rectify the asbestos and lead problems until January 2020.

144.   As a direct and proximate result of exposure to asbestos and lead, Plaintiffs and the Class Members have a significantly increased risk of contracting a serious latent diseases and/or physical injuries.

145.   Monitoring procedures exist that make the early detection of the diseases and/or physical injuries possible.

146.   The proposed and prescribed monitoring regime is different from that normally recommended in the absence of exposure to asbestos and lead.

147. The proposed and prescribed monitoring regime is reasonably necessary according to contemporary scientific and medical principles.

**WHEREFORE**, Plaintiffs and the Class Members respectfully request that this Court:

a.   Enter an order certifying the proposed Class identified herein; and designate and appoint Plaintiffs as the representative of the Class, and designating the undersigned as Class Counsel;

b.   Award Plaintiffs and the Class compensatory damages in an amount to be determined at trial, exclusive of interest and costs, for violations of Plaintiffs' and the Class Members' Constitutional rights, and Plaintiffs' and the Class Members' economic losses resulting from the District's and the Defendant School Board Members' unlawful and illegal conduct which sum includes all damages recoverable under 42 U.S.C. §§ 1983, 1985, and 1988;

c.   Award Plaintiffs and the Class Members annual medical monitoring and the establishment of a fund for financial expenses for increased medical monitoring with board certified pulmonary specialists of Plaintiffs' and the Class Members' choosing, as well as with physicians specializing in the detection and treatment of lead-based physical injuries and/or

48

diseases, together with the provisions of all necessary diagnostic studies, to determine and detect the extent which Plaintiffs and the Class Members have suffered physical injuries and/or diseases by virtue of their exposure to asbestos and lead;

d.  Award attorneys' fees and expenses, including but not limited, expert and medical witness fees, as provided by law, or equity, or as otherwise available;

e.  Grant the Plaintiffs and the Class Members such other, further, and different relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court.

f.  Award pre-judgment and post-judgment interest, as provided by law or equity; and

g.  Award such other or further relief as may be appropriate under the circumstances.

[*Signatures on last page*]

DATE:  February 7, 2020      By: *s/Patrick Howard*
      Robert J. Mongeluzzi (PA No. 36283)
      Simon B. Paris*
      Patrick Howard (PA No. 88572)
      Charles J. Kocher (PA No. 93141)
      **SALTZ, MONGELUZZI, BARRETT & BENDESKY, P.C.**
      1650 Market Street, 52nd Floor
      Philadelphia, PA  19103
      Phone: (215) 496-8282
      Fax: (215) 496-0999
      Email:  phoward@smbb.com

      Paul G. Batyko III, Esq.
      PA Atty. I.D. No. 306477
      **BATYKO LAW LLC**
      4113 Birney Avenue
      Moosic, PA 18507
      Phone: (570) 510-2503
      Fax: (570) 392-9044
      Email: pbatyko@batykolaw.com

      Daniel E. Gustafson*
      Raina Borrelli*
      **GUSTAFSON GLUEK PLLC**
      Canadian Pacific Plaza
      120 South Sixth Street, Suite 2600
      Minneapolis, MN 55402
      Phone: (612) 333-8844
      Email: Dgustafson@gustafsongluek.com

*pro hac admission to be requested*

      *Attorneys for Plaintiffs and the Proposed Class*