THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ALBERT P. O'DONNELL,                      :
REBECCA M. O'BRIEN, and          : CIVIL ACTION NO. 3:20-CV-225
GEORGE GEVARAS, on behalf of    : (JUDGE MARIANI)
themselves and all others similarly    :
situated,                                            :
                                                         :
                    Plaintiffs,                     :
                                                         :
             v.                                        :
                                                         :
SCRANTON SCHOOL DISTRICT, et al.,  :
                                                         :
                    Defendants.                  :

## MEMORANDUM OPINION

### I. INTRODUCTION

Defendants' Motion to Dismiss the Complaint (Doc. 17) is pending before the Court.

With the Motion, Defendants ask the Court to dismiss Plaintiffs' Class Action Complaint

(Doc. 1) with prejudice.  (Doc. 17 at 2.)

The three named Plaintiffs in the Class Action Complaint ("Complaint") are Albert

O'Donnell, principal of a Scranton School District elementary school, Rebecca O'Brien, a

teacher in a Scranton School District middle school, and George Gevaras, a former

maintenance worker at numerous Scranton School District schools.  (Doc. 1 ¶¶ 3-5.)  In

addition to the Scranton School District ("District"), Defendants are current and former

School Board Members in the District.  (Id. ¶¶ 8-22.)

This 42 U.S.C. §§ 1983 and 1988 action is based on Plaintiffs' allegations that the District has numerous confirmed instances of asbestos contamination and lead in the drinking water in its schools, and the District was made aware of these problems.  (Doc.1.) Plaintiffs maintain in their supporting brief that Defendants' "deliberate indifference to Plaintiffs' safety, combined with their false affirmation that the Schools were safe, created a dangerous condition in the Schools resulting in Plaintiffs' and putative class members' exposure to asbestos and lead." (*Id*.)  Plaintiffs' Complaint, filed on February 7, 2020, contains two counts: Count I asserts a State Created Danger claim pursuant to 42 U.S.C. §§ 1983 and 1988; Count II asserts a Medical Monitoring claim pursuant to 42 U.S.C. §§ 1983 and 1988.   (Doc. 1 at 45, 47.)

For the reasons that follow, the Court will grant the Defendants' Motion to Dismiss the Complaint (Doc. 17).  However, the Court will dismiss the Complaint (Doc. 1) without prejudice and allow Plaintiff to file an amended complaint.

## II. BACKGROUND[1]

Plaintiffs are current or former District employees.  (Doc. 1 ¶¶ 3-5.)  Defendants are the District and current or former School Board Members.  (*Id*. ¶¶ 6, 8-22.)  Individual Defendants allegedly had access to and were able to review environmental engineering reports about the presence of asbestos and lead in the District Schools ("Schools").   (*Id*. ¶¶

---

[1] Unless otherwise noted, the background information reiterates facts contained in Plaintiffs' Complaint (Doc. 1).

2

8-22.)  At all relevant times, the District owned, possessed, and controlled the Schools.  (*Id.* 27.)

At the end of January 2020, District officials first revealed widespread asbestos and lead issues affecting most of the Schools in the District.  (Id. ¶ 28.)  During the week of January 27, 2020, the District closed four Schools (Northeast Intermediate, Prescott Elementary, Willard Elementary, and Robert Morris Elementary) due to the presence of airborne asbestos and lead in the drinking water.  (*Id.* ¶ 29.)  At the time the Complaint was filed, one of the Schools remained closed, and the others re-opened without a complete explanation as to what was done to remediate them.  (*Id.* ¶ 30.)

## Asbestos

Asbestos is considered an excellent electrical insulator due to its high resistance to fire, heat, electrical, and chemical damage, but it is a highly toxic airborne fibrous substance that has been identified as a major carcinogen to those exposed to it.  (*Id.* ¶¶ 31-32.)  There are two general ways that asbestos becomes airborne:

> 34. . . . Products manufactured with asbestos can age, deteriorate or biodegrade over time. As asbestos crumbles with age, it can collapse and leave light dust of asbestos fibers surrounding it causing a natural disturbance. These fibers can be lifted on any slight draft or ventilation action and inhaled. Other natural forces like air friction can fray asbestos in pipe insulation, or direct contact with pests, like mice or rats, can tear into the material and expose the fibers.

> 35. Manufacture, transport, installation and — more recently — the destruction of materials containing asbestos has become a primary cause for

asbestos to be injected into the air. Demolition and renovation pose the most critical threat as workers unknowingly cut into workspaces or materials containing asbestos without the proper hazard gear. Natural winds and ventilation systems used in the buildings while work is ongoing create exposure risk for disturbed and airborne asbestos fibers, causing them to be inhaled by a wider group than those who directly contacted the material.

36. Inhalation of asbestos particles occurs when asbestos-containing materials decompose or are physically disturbed.

(Doc. 1 ¶¶ 34-36.)

In 1970, Congress passed the Clean Air Act, which allowed the Environmental Protection Agency to regulate asbestos as a hazardous air pollutant.  (*Id.* ¶ 33.)  The EPA has designated asbestos as a Group A carcinogen.  (*Id.*)  The Mayo Clinic has indicated that the "effects of long-term exposure to asbestos typically don't show until 10 to 40 years after initial exposure [and] [s]ymptoms can vary in severity."  (*Id.* ¶ 41 (citation omitted).)

Federal law and Environmental Protection Agency regulations require the District to inspect its Schools for asbestos-containing building material, prepare management plans, and take action to prevent or reduce asbestos hazards.  (*Id.* ¶¶ 43-44.)  As early as July 1988, the District and its officials conducted asbestos inspections throughout the District pursuant to the Asbestos Hazard Emergency Response Act ("AHERA"), which, at that time, revealed widespread and pervasive asbestos problems in various Schools necessitating remediation.  (*Id.* ¶ 44.)   Between the 1988 and 2019 inspections, Guzek Associates ("Guzek"), the District's environmental engineers, identified asbestos problems in various

4

Schools as part of a 2016 inspection, including, but not limited to, the need to remove bags of asbestos leftover from an abatement project that sat in the basement of West Scranton High school. (*Id*. ¶ 49.) The 2016 Guzek report contained various recommendations, including a remediation plan. (*Id*. ¶ 50.) Later studies reported the same results and Guzek "suspected that school officials were not fixing the problem." (*Id*. ¶ 51.)

Following 2019 testing, the District revealed the existence of asbestos in all District Schools except the four newest. (*Id*. ¶ 46.) The 2019 test results showed there were more than 950 areas in District Schools with asbestos and 202 areas that needed urgent attention due to unsafe and hazardous levels. (*Id.* ¶ 47.) The 2019 reports detailed the problems in each School and the Administrative building. (*Id*. ¶¶ 54-97.)

## Lead

Lead can enter drinking water when plumbing materials that contain lead corrode, especially where the water has high acidity or low mineral content that corrodes pipes and fixtures. (*Id.* ¶ 98.)

> The most common sources of lead in drinking water are lead pipes, faucets, and fixtures. Lead pipes are more likely to be found in older cities and buildings built before 1986. Among properties without lead service lines, the most common problem is with brass or chrome-plated brass faucets and plumbing with lead solder.

(*Id.*)

5

The EPA has set the maximum contaminant level goal for lead in drinking water at zero because lead is a toxic metal that can be harmful to human health even at low exposure levels.  (*Id.* ¶ 99.)   Lead affects different groups in different ways:

100. Young children, infants, and fetuses are particularly vulnerable to lead because the physical and behavioral effects of lead occur at lower exposure levels in children than in adults. A dose of lead that would have little effect on an adult can have a significant effect on a child.

101. In children, low levels of exposure have been linked to damage to the central and peripheral nervous system, learning disabilities, shorter stature, impaired hearing, and impaired formation and function of blood cells.

102. Lead can accumulate in human bodies over time, where it is stored in bones along with calcium. During pregnancy, lead is released from bones as maternal calcium and is used to help form the bones of the fetus. This is particularly true if a woman does not have enough dietary calcium. Lead can also cross the placental barrier exposing the fetus to lead. This can result in serious effects to the mother and her developing fetus, including reduced growth of the fetus and premature birth. Lead can also be transmitted to infants through breast milk.

103. For adults, generally, lead exposure can cause cardiovascular effects, increased blood pressure and incidence of hypertension; decreased kidney function; and reproductive problems (in both men and women).

(Doc. 1 ¶¶ 100-103.)

The District first tested its water in 2016, and in June of that year the District announced it had shut off eight water fountains and eleven sinks after test results revealed elevated lead levels in the water.  (*Id.* ¶ 106.)  District officials planned to replace the brass

or bronze fittings in the affected locations in summer 2016, but Plaintiffs believe they did not do so. (*Id.*)

In 2019, Guzek performed evaluations of lead in drinking water at District Schools. [2] (*Id.* ¶ 104.) The identified actionable level is 0.015 mg/l. (*Id.* ¶ 112.) The 2019 lead testing detailed the problem at seven District Schools and Memorial Stadium. (*Id.* ¶¶ 109-116.) In January 2019, Guzek urged the District to shut off more than two dozen faucets and sinks in Schools throughout the District. (*Id.* ¶ 107.) However, many of those fixtures remained in operation until January 2020 when tests again revealed unsafe lead levels. (*Id.*) In January 2020, the District for the first time turned off and/or placed warnings at thirty-eight sinks and fountains across the District, all of which contained lead readings above the action level of 0.015 mg/l. (*Id.* ¶ 105.) The signs did not specifically explain or warn of the health consequences associated with using the water. (*Id.* ¶ 108.)

Plaintiffs allege that, due to dangerous levels of asbestos and lead in their work locations, "they either have, or will need to, spend money for an unspecified duration to undergo testing to monitor [their] health and exposure to both asbestos and lead." (*Id.* ¶¶ 3-5.)

---

[2] Plaintiffs cite "Exhibit O"—"a copy of Guzek's "Lead in Water Issues" summary spreadsheet" (Doc. 1 ¶ 104)—but "Exhibit O" is not attached to the Complaint or otherwise filed. (*See* Doc. 1-1 through 1-15.)

## Class Action Allegations

Plaintiffs allege that the Defendant District and the Defendant School Board

Members knowingly allowed the presence of asbestos and lead in unsafe levels within the

Schools for an extended period and did not do anything to properly correct the problems or

notify students, parents, employees, and independent contractors of the presence of

asbestos and lead in unsafe levels until January 2020.  (*Id.* ¶¶ 117, 119, 120.)  Plaintiffs

bring their claims as a class action pursuant to Rule 23(a), (b)(1), (b)(2) and (b)(3) on behalf

of the class defined as follows:

> All persons who attend or attended Schools within the District as students, all
> parents and/or legal guardians of persons who attend or attended Schools
> within the District as students, all persons who work or worked in Schools within
> the District as employees; and all persons who are allowed or were allowed to
> be present in the Schools within the District from 2016 to the present.

> Excluded from the Class are those who only attended or worked at the new
> Scranton High School, Whittier Elementary, Tripp Elementary, and Kennedy
> Elementary during the respective Class period; the individual District Board
> Member Defendants; and anyone who has already manifested a disease a
> result of exposure to asbestos or lead in the District Schools.

(*Id.* ¶ 122.)

## III. STANDARD OF REVIEW

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it

does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations, alterations, and quotations marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 231 n.14 (3d Cir. 2013) (internal citation, alteration, and quotation marks omitted). Thus, "the presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id*.

"Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted

unlawfully.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal

citation omitted) (first quoting *Twombly*, 550 U.S. at 556; then quoting *Iqbal,* 556 U.S. at

678).  "The plausibility determination is 'a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense.'"  *Id.* at 786-87 (quoting

*Iqbal,* 556 U.S. 679).

The Third Circuit Court of Appeals has identified the following three-step inquiry as

appropriate to determine the sufficiency of a complaint pursuant to *Twombly* and *Iqbal:*

> First, the court must take note of the elements a plaintiff must plead to state a
> claim. Second, the court should identify allegations that, because they are no
> more than conclusions, are not entitled to the assumption of truth. Finally,
> where there are well-pleaded factual allegations, a court should assume their
> veracity and then determine whether they plausibly give rise to an entitlement
> for relief.

*Burtch v. Milberg Factors, Inc.,* 662 F.3d 212, 221 (3d Cir.2011); *see also Connelly v. Steel*

*Valley Sch. Dist*., 706 F.3d 209, 212 (3d Cir. 2013); *Santiago v. Warminster Twp.,* 629 F.3d

121, 130 (3d Cir.2010).

In considering a motion to dismiss, the reviewing court examines

the "complaint, exhibits attached to the complaint, [and] matters of public
record," *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010), we can also
consider documents "that a defendant attaches as an exhibit to a motion to
dismiss," *Pension Benefits Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d
1192, 1196 (3d Cir. 1993), if they are "undisputedly authentic" and "the
[plaintiff's] claims are based [on them]," *Mayer*, 605 F.3d at 230. That holding
extends to settlement material because plaintiffs "need not provide admissible
proof at th[e] [motion-to-dismiss] stage." *In re OSG Sec. Litig.*, 12 F. Supp.3d
619, 622 (S.D.N.Y. 2014); *see also In re MyFord Touch Consumer Litig.*, 46 F.

> Supp.3d 936, 961 n.5 (N.D. Cal. 2014) (same). Moreover, the Supreme Court
> has been clear about the scope of our review, stating we "*must* consider the
> complaint in its entirety, as well as other sources [we] ordinarily examine when
> ruling on ... motions to dismiss, in particular, documents incorporated into the
> complaint by reference, and matters of which a court may take judicial
> notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127
> S. Ct. 2499, 168 L.Ed.2d 179 (2007) (emphasis added).

*Estate of Roman v. City of Newark*, 914 F.3d 789, 796–97 (3d Cir.), *cert. denied sub*

*nom. Estate of Roman v. City of Newark, New Jersey*, 140 S. Ct. 82, 205 L. Ed. 2d 28

(2019), and *cert. denied*, 140 S. Ct. 97, 205 L. Ed. 2d 28 (2019).

Even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit

a curative amendment unless such an amendment would be inequitable or futile." *Phillips v.*

*Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant
> moves to dismiss it, unless the district court finds that amendment would be inequitable
> or futile, the court must inform the plaintiff that he or she has leave to amend the
> complaint within a set period of time.

*Id.*

## IV. ANALYSIS

Defendants contend that the Court should dismiss Plaintiffs' Complaint on numerous

grounds: 1) Supreme Court precedent forecloses Plaintiffs' substantive due process claims

based on allegedly unsafe work environments; 2) Plaintiffs fail to state a claim under the

theory of a state-created danger asserted in Count I; 3) Plaintiffs fail to state a claim in

Count II because they are not entitled to medical monitoring under 42 U.S.C. § 1988; 4)

Plaintiffs have failed to state a claim for municipal liability pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), against Defendant District; 5) Claims against individual Defendants in their official capacities should be dismissed because they are redundant of claims against Defendant District; and 6) Claims against individual Defendants are insufficiently pled and barred by the doctrine of qualified immunity.  (Doc. 18 at 13-14.)  The Court will address each claimed basis for relief in turn.

## A. Substantive Due Process Claims Based on Allegedly Unsafe Work Environments

Defendants first maintain that Plaintiffs' claims are categorically barred by *Collins v. City of Harker Heights*, 503 U.S. 115 (1992), which holds that the Fourteenth Amendment does not require a state 'to provide its employees with certain minimal levels of safety and security.'"  (Doc. 18 at 15 (quoting *Collins*, 503 U.S. at 127).)  Plaintiffs respond that the facts of this case differ from those in *Collins* such that the requisite standard is satisfied here.  (Doc. 21 at 15-18.)  The Court agrees that a claim that an employer failed to provide a workplace that is free from unreasonable risks of harm would fail, but concludes that *Collins* does not categorically foreclose Plaintiffs' substantive due process claim.

In *Collins*, an employee in Harker Heights' sanitation department died of asphyxia after entering a manhole to unstop a sewer and his widow filed suit under 42 U.S.C. § 1983. (503 U.S. at 115.)  The question presented was "whether . . . 42 U.S.C. § 1983[] provides a remedy for a municipal employee who is fatally injured in the course of his employment

because the city customarily failed to train or warn its employees about known hazards in the workplace." *Id.* at 117. Following the conclusion that "the city's conduct may be actionable under state law," the Court stated "we hold that § 1983 does not apply because such conduct does not violate the Due Process Clause." *Id.*

The Court summarized the petitioner's allegations as follows:

Collins "had a constitutional right to be free from unreasonable risks of harm to his body, mind and emotions and a constitutional right to be protected from the city of Harker Heights' custom and policy of deliberate indifference toward the safety of its employees." App. 7. Her complaint alleged that the city violated that right by following a custom and policy of not training its employees about the dangers of working in sewer lines and manholes, not providing safety equipment at jobsites, and not providing safety warnings. The complaint also alleged that a prior incident had given the city notice of the risks of entering the sewer lines and that the city had systematically and intentionally failed to provide the equipment and training required by a Texas statute.

503 U.S. at 117-18.

After expressing the Court's reluctance to expand the concept of substantive due process, the Court stated that

[a] fair reading of petitioner's complaint does not charge the city with a willful violation of Collins' rights. Petitioner does not claim that the city or any of its agents deliberately harmed her husband. In fact, she does not even allege that his supervisor instructed him to go into the sewer when the supervisor knew or should have known that there was a significant risk that he would be injured. Instead, she makes the more general allegation that the city deprived him of life and liberty by failing to provide a reasonably safe work environment. Fairly analyzed, her claim advances two theories: that the Federal Constitution imposes a duty on the city to provide its employees with minimal levels of safety and security in the workplace, or that the city's "deliberate indifference" to

Collins' safety was arbitrary government action that must "shock the conscience" of federal judges. Cf. *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952).

*Collins*, 503 U.S. at 125–26.

The Court found that the city's "alleged failure to train its employees, or to warn them about known risks of harm, was not an omission that can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Id.* at 128.  The explanation the Court provided for this determination is instructive:

> Our refusal to characterize the city's alleged omission in this case as arbitrary in a constitutional sense rests on the presumption that the administration of government programs is based on a rational decisionmaking process that takes account of competing social, political, and economic forces. Cf. *Walker v. Rowe,* 791 F.2d 507, 510 (CA7 1986). Decisions concerning the allocation of resources to individual programs, such as sewer maintenance, and to particular aspects of those programs, such as the training and compensation of employees, involve a host of policy choices that must be made by locally elected representatives, rather than by federal judges interpreting the basic charter of Government for the entire country. The Due Process Clause "is not a guarantee against incorrect or ill-advised personnel decisions." *Bishop v. Wood,* 426 U.S. [341, 350 (1976)]. Nor does it guarantee municipal employees a workplace that is free of unreasonable risks of harm.

*Collins*, 503 U.S. at 128-29.

The Court of Appeals for the Third Circuit examined *Collins* in *Kaucher v. County of Bucks*, 455 F.3d 418 (3d Cir. 2006), where the plaintiffs, a husband and wife, alleged that the husband had contracted Methicilin Resistanat Staphylococcus Aureus ("MRSA") infection as a result of the defendants' "conscience-shocking behavior in creating unsanitary

and dangerous conditions at the jail" where he was a corrections officer.  *Id.* at 420.  The

plaintiffs filed suit under § 1983 alleging a violation of substantive due process rights.  *Id.*

The District Court characterized the claim as alleging the defendants "failed in their duty to

provide a safe working environment for the jail's corrections officers" and granted summary

judgment in favor of the defendants concluding, under *Collins*, that the plaintiffs had not

alleged a deprivation of a constitutional right because "the due process clause does not

guarantee certain minimum levels of workplace safety and security, nor does it impose

federal duties analogous to those imposed by state tort law."  *Id.* at 423-24.  Because the

plaintiffs acknowledged on appeal that the failure to provide minimum levels of workplace

safety does not support an actionable substantive due process claim, the Circuit Court did

not discuss the District Court's determination.  Rather, the Circuit Court reviewed *Collins* in

the context of the plaintiffs' contention on appeal that their § 1983 action was based on the

defendants' "'conscience-shocking' conduct in creating dangerous conditions that led to the

spread of infection, in failing to offer sufficient medical treatment to infected inmates and

corrections officers, and in misrepresenting the risks of infection. [The plaintiffs] contend

defendants should be held liable for this conduct under the state created danger doctrine."

*Id.* at 424.

As in *Collins*, the Circuit Court in *Kaucher* concluded that the defendants' conduct

was not conscience shocking.  *Id.* at 431.  *Kaucher* did so after an extensive review of

relevant caselaw beginning with identification of the essence of a substantive due process

claim:

> In *Lewis,* the Supreme Court explained that "the core of the concept" of due process is "protection against arbitrary action," *County of Sacramento v. Lewis,* 523 U.S. 833, 845, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), and that "only the most egregious official conduct can be said to be arbitrary in the constitutional sense," *id.* at 846, 118 S.Ct. 1708 (quotation omitted). The Court further explained, "the substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Id.* at 847, 118 S.Ct. 1708 (quotation omitted). Accordingly, in a substantive due process challenge to an action taken by an executive branch official, "the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* at 847 n. 8, 118 S.Ct. 1708; *see also United Artists Theatre Circuit, Inc. v. Twp. of Warrington,* 316 F.3d 392, 399–400 (3d Cir.2003) ("[O]ur cases have repeatedly acknowledged that executive action violates substantive due process only when it shocks the conscience.").

*Kaucher*, 455 F.3d at 425.  *Kaucher* went on to survey authority related to what action is

conscience shocking, beginning with the observations that "'the measure of what is

conscience shocking is no calibrated yard stick,' *Lewis,* 523 U.S. at 847, 118 S.Ct. 1708,

and '[d]eliberate indifference that shocks in one environment may not be so patently

egregious in another,' *id.* at 850, 118 S.Ct. 1708." *Kaucher*, 455 F.3d at 425-26.

In the section of their brief asserting that *Collins* categorically bars Plaintiffs' claims,

Defendants conclude, without detailed analysis, that Plaintiffs' claims, like those in *Collins*,

*Kaucher*, and *Rogriguez v. City of Philadelphia*, 350 F. App'x 710, 713 (3d Cir. 2009),[3] that

dismissal with prejudice is appropriate here.  While the Court agrees that Plaintiffs cannot

succeed on a claim predicated only on an assertion that Defendants failed to provide "a

workplace that is free from unreasonable risks of harm," *Collins*, 503 U.S. at 129,

Defendants have not shown that *Collins* categorically bars Plaintiffs' substantive due

process claims.  Defendants acknowledge in a footnote following their conclusion that

"[a]fter Collins, public employees can bring state-created danger claims for work-related

dangers only when they allege an affirmative, arbitrary state action that shocks the

conscience."  (Doc. 18 at 17 n.2 (citing *Kaucher*, 455 F.3d at 430-31).)

The Court does not disagree with Defendants' cited authority.  However, in seeking a

categorical bar, Defendants cannot satisfy their burden of showing that Plaintiffs'

substantive due process claim should be dismissed with prejudice by summarily concluding

in the margin that "Plaintiffs' claims are predicated on a 'public employer's [alleged] ordinary

breach of its duty of care relative to its employees,' which is not a constitutional harm."

(Doc. 18 at 17 n.2 (citing *Eddy v. V.I. Water & Power Auth.*, 256 F.3d 204, 212-13 (3d Cir.

2001)).)  Further, because Plaintiffs' proposed class includes students and others (*see* Doc.

1 ¶ 122) and substitution of class representatives is allowed at the pre-certification stage,

---

[3] In *Rodriguez*, a Third Circuit panel considered a state-created danger claim brought by a police officer who was assaulted by an inmate while working at a city jail and concluded, pursuant to *Kaucher* and *Colins*, that the city's alleged failure to provide a safe work environment did not give rise to a substantive due process claim.  350 F. App'x at 713.

Defendants' request to dismiss all substantive due process claims with prejudice based on their *Collins* argument, which applies only to employees, is properly denied. [4]

## B. State-Created Danger

Defendants next contend that Plaintiffs' Fourteenth Amendment state-created danger claim set out in Count I of the Complaint must be dismissed because their allegations cannot satisfy any of the elements under this theory of liability. (Doc. 18 at 18.) Plaintiffs respond that they properly plead each element of a state-created danger claim. (Doc. 21 at 18.)  For the reasons set out below, the Court concludes that Defendants have shown that Count I of Plaintiffs' claim is properly dismissed.

Explaining the basis of a state-created danger claim, the Court of Appeals for the Third Circuit recently stated that

> the government has no general legal duty to keep people safe. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195–96, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). But it assumes one "when it affirmatively places [a] person in a position of danger [that] the person would not otherwise have faced." *Kamara v. Att'y Gen.*, 420 F.3d 202, 216 (3d Cir. 2005). Then, the government must protect people from the dangers it created. The Fourteenth Amendment's Due Process Clause requires it to do so. *Id.*

*Mears v. Connolly*, 24 F.4th 880, 883 (3d Cir. 2022).

---

[4] *See, e.g., Rivet v. Office Depot, Inc.*, 207 F. Supp. 3d 417, 430 (D.N.J. 2016) ("the substitution of class representatives is allowed at the pre-certification stage");  *Phillips v. Ford Motor Co.*, 435 F.3d 785, 787-88 (7th Cir. 2006) (listing cases) (in a class action, if claims against the named plaintiffs are dismissed before the class has been certified, federal courts generally allow, substitution for the named plaintiffs unless jurisdiction never attached).

*Mears* then affirmed the pleading requirements of a state-created danger claim

which were set out in *Bright v. Westmoreland*, 443 F.3d 276 (3d Cir. 2006), as follows:

> (1) the harm ultimately caused was foreseeable and fairly direct;
>
> (2) a state actor acted with a degree of culpability that shocks the conscience;
>
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

443 F.3d at 281 (internal quotations marks omitted).

Analyzing a state-created danger claim in *Henry v. City of Erie*, 728 F.3d 275 (3d Cir.

2013), the Third Circuit Court cautioned against expansion of the state-created danger

doctrine after citing relevant Supreme Court precedent:

> [t]he Supreme Court has counseled a restrained approach in the area of substantive due process. The Court has said that "guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended," and cautioned that courts must "exercise the utmost care whenever ... asked to break new ground in this field." *Collins v. City of Harker Heights,* 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). Heeding this advice, the *DeShaney* Court declined to expand its substantive due process jurisprudence even in the face of tragic circumstances, explaining that
>
> > [t]he people ... may well prefer a system of liability which would place upon the State and its officials the responsibility for failure to act in situations such as the present one. They may create such a system, if they do not have it already, by changing the tort

> law of the State in accordance with the regular lawmaking process. But they should not have it thrust upon them by this Court's expansion of the Due Process Clause of the Fourteenth Amendment.
>
> 489 U.S. at 203, 109 S.Ct. 998. Again, in *County of Sacramento v. Lewis,* the Court said that substantive due process "does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm," 523 U.S. 833, 848, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), and found that in cases dealing with executive action, our role is to guard against "only the most egregious official conduct," *id.* at 846, 118 S.Ct. 1708.

728 F.3d at 286.

Within this legal framework, the Court will now assess whether Plaintiffs have

plausibly pled the four identified requirements of their state-created danger claim.

### 1. Foreseeable and Fairly Direct Harm

Defendants assert that Plaintiffs do not allege the required harm: "[t]hey allege that

they were potentially exposed to asbestos or lead in their workplace, without identifying any

specific instances of exposure, and that they are now 'more vulnerable to physical injuries,'"

that is "not enough to state a substantive due process harm." (Doc. 18 at 19 (quoting Doc.

1 ¶ 133; listing cases).)  Plaintiffs respond that the harm was foreseeable and fairly direct

result of Defendants' acts, stating that the harm was foreseeable based on the Guzek

reports and the harm was fairly direct because "Defendants invited, authorized and

permitted Plaintiffs and class members to enter Schools they knew to be contaminated by

asbestos and lead while maintaining it was safe to do so." (Doc. 21 at 20.)  The Court

concludes that Plaintiffs have not sufficiently pled that the alleged harm was the fairly direct result of Defendants. Actions.

Plaintiffs must "allege an awareness on the part of the state actors that rises to [the] level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 238 (3d Cir. 2008).

Here, each Plaintiff alleges that he or she was exposed to asbestos and lead in the workplace and will have to undergo testing to monitor his or her health and exposure to these substances. (Doc. 1 ¶¶ 3-5.) Defendants argue that more is needed, i.e., allegations of physical injury such as symptoms of disease related to asbestos or lead exposure. (*See* Doc. 18 at 19.) In support of their argument, Defendants cite caselaw from two district courts outside the Third Circuit and a Sixth Circuit case, none of which address the situation at issue here. (Doc. 18 at 19-20 (citing *Walker v. City of East Chicago*, Civ. A. No. 16-0367, 2017 WL 4340259 (N.D. Ind. Sept. 29, 2017); *Naperville Smart Meter Awareness v. City of Naperville*, 69 F. Supp. 3d 830, 839 (N.D. Ill. 2014); *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 537 (6th Cir. 2008)).)

In *Walker,* harm was not discussed in the context of the plaintiffs' state-created danger claim which was dismissed because the District Court first decided that the alleged state actors did not affirmatively create a danger. 2017 WL 4340259, at *5. The District

Court concluded that the plaintiffs' Fourteenth Amendment claim for a violation of their right to bodily integrity could not be supported by an alleged increased risk of injury created by a policy which allowed for public housing in an area with contaminated soil. *Id.* at \*5 (citing *Naperville*, 69 F. Supp. 3d at 839). *Naperville*, upon which Defendants also rely, did not consider a state-created danger claim but addressed asserted violations of due process rights to bodily integrity and self-determination. 69 F. Supp. 3d at 839. Defendants quote *Hunt's* observation that "'even deliberate exposure of public employees to high risk does not violate the constitution.'" (Doc. 18 at 20 (quoting Hunt, 542 F.3d at 537).) However, the quotation was cited in relation to a case where a prison guard was raped by an inmate, *Nobles v. Brown*, 985 F.2d 235, 238 (6th Cir. 1998), and the source of the quotation is *Walker v. Rowe*, 791 F.2d 507 (7th Cir. 1986), where prison guards were killed by inmates during a riot, *id.* at 507-08. This review of Defendants' cited cases shows that they do not provide the support suggested in that they do not support the proposition that the claimed harm in this case can never satisfy the pleading requirements of the first element of a state-created danger theory.

Defendants also contend that, "to the extent Plaintiffs assert the need for medical monitoring as a harm, they raise it as an economic injury rather than a harm." (Doc. 18 at 20 (citing Doc. 1 ¶ 2 and at 48; *Metro-North Commuter R. Co. v. Buckley*, 521 U.S. 424, 438-40 (1997)).) The Court does not read Plaintiffs' Complaint to allege medical monitoring

22

only as an economic injury in that each Plaintiff alleges generally that he or she was exposed to asbestos and lead in the workplace and will have to undergo testing to monitor his or her health and exposure to these substances.  (Doc. 1 ¶¶ 3-5.)

In their reply brief, Defendants acknowledge that *Wright v. City of Philadelphia*, Civ. A. Nos. 10-1102, 11-5990, 12-114, 2105 WL 894237 (E.D. Pa. Mar. 2, 2015), "holds that, where all of the elements of a § 1983 claim are otherwise satisfied, a plaintiff need not show manifested physical symptoms of asbestos exposure to state a claim *because medical monitoring can constitute a valid harm*." (Doc. 23 at 9 (citing *Wright*, 2015 WL 894237, at *8-11) (emphasis added).)  *Wright* extensively discussed medical monitoring in the context of damages and concluded "[t]o the extent that Plaintiffs seek to establish a fund for financial expenses for increased medical monitoring because of their exposure to asbestos, they have suffered an actionable harm compensable under § 1983." 2015 WL 894237, at *8.  As to "harm" in the context of the first element of the plaintiff's state-created danger claim, the District Court noted that the plaintiffs claimed two direct harms as a result of their asbestos exposure:  medical monitoring and property damage.  *Id.* at 9.  The court then discussed the foreseeability aspect of the first element and concluded that the first element was satisfied because the plaintiffs "sufficiently allege that Wright's property loss and [the] costs of medical monitoring are direct and foreseeable consequences of Defendants' conduct." *Id.*

The Court finds that *Wright* determined medical monitoring to be a cognizable harm under the first element of the state-created danger analysis. 2015 WL 894237, at *9, and Defendants' arguments do not undisputedly eliminate that possibility here. Therefore, the Court concludes that Defendants have not satisfied their burden of showing that Plaintiffs have not plausibly pled a cognizable harm under the state-created danger theory's first element. With this determination, the Court will follow *Wright* for present purposes only and assume Plaintiffs have sufficiently pled that they have suffered harm. Based on this assumption, the Court will proceed with the inquiry as to whether the harm alleged was foreseeable and fairly direct.

Defendants argue that "Plaintiffs' alleged harm is not the foreseeable or fairly direct consequence of Defendants' purported conduct." (Doc. 18 at 21.) As set out above, Plaintiffs must allege that the awareness on the part of Defendants "rises to the level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." *Phillips*, 515 F.3d at 238. Although Plaintiffs' Complaint does not directly allege either, the Court will proceed with the analysis based on the assumption that the foreseeability requirement is satisfied because "reasonable inferences can be drawn" from facts alleged in the Complaint that Defendants had knowledge of the risk posed by asbestos and lead in the schools.[5] *Ethypharm*, 707 F.3d at 231 n.14.

---

[5] For purposes of analyzing the first element of the state-created danger theory, this assumption is arguably warranted because it is almost inconceivable that a District policymaker whose actions would

Turning to the "fairly direct" requirement, in *Henry v. City of Erie*, 728 F.3d 275

(2013), the Third Circuit provided the following guidance:

> To fulfill the "fairly direct" requirement of the state-created danger claim, the plaintiff must plausibly allege that state officials' actions "precipitated or w[ere] the catalyst for" the harm for which the plaintiff brings suit. *Morse*, 132 F.3d at 910. "Precipitate," in turn, means "to cause to happen or come to a crisis suddenly, unexpectedly, or too soon." *Webster's Third New International Dictionary* 1784 (1993); *see also The Random House Dictionary of the English Language* 1521 (2d ed.1987) (defining "precipitate" as "to hasten the occurrence of; bring about prematurely, hastily, or suddenly"); *id.* at 325 (defining "catalyst" as "a person or thing that precipitates an event or change"). Thus, it is insufficient to plead that state officials' actions took place somewhere along the causal chain that ultimately led to the plaintiff's harm.

*Henry*, 728 F.3d at 285.[6]

Although the facts of this case are distinguishable from those considered in *Henry*,

Plaintiffs Complaint basically alleges that Defendants' response to the presence of asbestos

---

create municipal liability, *see Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), would not have known of the Guzek studies and that policymaker or another administrator would not have advised the Board of the results that identified numerous schools with locations which warranted the highest hazard rating and removal priority. (*See, e.g.*, Doc. 1 ¶¶ 44, 47, 49, 52, 58. 71, 72, 75.)

Defendants also assert in the margin that, with respect to the lead allegations, many of the Board Members left their positions before 2019 when Plaintiffs claim that the Individual Defendants had knowledge of lead in the drinking water. (Doc. 18 at 21 n.4.) Based on both the manner of presentation of the assertion and the fact that Defendants do not seek dismissal of any specific Individual Defendant, the assertion as to Individual Defendants does not warrant further discussion.

[6] *Henry* was brought by the Estates of a Section 8 tenant and her guest who died in a fire in the tenant's apartment. 728 F.3d at 277. Suit was filed against the local housing agency and the housing inspector under 42 U.S.C. § 1983 and the state-created danger theory. *Id.* The Circuit Court concluded that the plaintiffs had not plausibly alleged that the defendants' actions were close in time and succession to the ultimate harm, i.e., the "defendants approval and subsidization of the apartment did not lead 'fairly directly' to the fire that claimed the lives of the decedents." *Id.* at 285. Rather, the defendants' "actions were separated from the ultimate harm by a lengthy period of time and intervening forces and actions." *Id.*

and lead in the schools led to their potential exposure to these harmful substances and related need for medical monitoring.  However, Plaintiffs acknowledge that "[a]s early as July 1988, the District and its officials conducted asbestos inspections throughout the District pursuant to the Asbestos Hazard Emergency Response Act ("AHERA"), which, at that time, revealed widespread and pervasive asbestos problems in various Schools necessitating remediation." (Doc. 1 ¶ 44.)  Thus, Plaintiffs' Complaint recognizes that Defendants' conduct from 2016 forward "took place somewhere along the causal chain that ultimately led to the plaintiff's harm." *Henry*, 728 F.3d at 285.  This is insufficient to plead that Defendants' conduct was the fairly direct cause of Plaintiffs' alleged harm. *Id.* Therefore, Plaintiffs' have not satisfied the first requirement for pleading a state-created danger claim.  Notwithstanding this conclusion, the Court will address the remaining elements of a state-created danger claim.

### 2. Nature of Conduct Alleged

The second element of a state-created danger claim requires Plaintiffs to plead sufficient facts to plausibly show that Defendants acted with a degree of culpability that shocks the conscience. *Bright*, 443 F.3d at 281.  Defendants maintain that Plaintiffs cannot satisfy this requirement for two reasons: 1) the "failure to remediate asbestos or lead is not the type of conscience-shocking, egregious conduct prohibited by the Fourteenth Amendment" (Doc. 18 at 24 (citing *Brown v. Detroit Publ. Sch. Cmty. Dist.*, 763 F. App'x

26

486, 503-04 (6th Cir. 2019); *Upsher v. Grosse Pointe Pub. Sch. Sys.*, 285 F.3d 448, 453-54

(6th Cir. 2002))); and 2) "Plaintiffs do not allege that any Board Member actually knew about

the presence of asbestos or lead in the schools" (*id.*).  For the reasons that follow, the Court

concludes that Defendants have not satisfied their burden of showing that Plaintiffs'

allegations of conscience-shocking behavior are not plausible.

The parties agree that the appropriate standard to determine whether Defendants'

conduct in this case meets the conscience-shocking requirement is "deliberate indifference."

(*See* Doc. 18 at 23-24; Doc. 21 at 22.)  In *Kaucher*, the Circuit Court noted that it had

previously expressed approval of the following deliberate indifference standard: "deliberate

indifference . . . require[s] that 'a person consciously disregard a substantial risk of serious

harm.'"  455 F.3d at 427-28 (quoting *Ziccardi v. City of Philadelphia*, 288 F.3d 57, 66 (3d

Cir. 2002)).[7]

For purposes of this discussion, the Court again proceeds on the premise that

reasonable inferences can be drawn from the Complaint that Defendants had knowledge of

asbestos and lead problems in the schools.  *See supra* p. 24 n.5.  Therefore, the Court will

address Defendants' first ground for insufficiency.

---

[7] Plaintiffs note that the Third Circuit has concluded "it is possible 'that indifference might exist without actual knowledge of harm when the risk is so obvious that it should be known.'"  (Doc. 21 at 22 (citing *Phillips*, 515 F.3d at 240 (citing *Sanford*, 456 F.3d at 306)).)

Defendants' asserted reliance on *Brown* and *Upsher* to support their assertion that

"failure to remediate asbestos or lead is not the type of conscience-shocking, egregious

conduct prohibited by the Fourteenth Amendment" (Doc. 18 at 24 (citing *Brown*, 763 F.

App'x at 503-04; *Upsher*, 285 F.3d at 453-54)) is misplaced in that neither case was

decided under the deliberate indifference standard. The state-created danger doctrine was

not mentioned in *Upsher*.  In *Brown* the plaintiff raised the doctrine only in her brief, *see* 763

F. App'x at 503.  Moreover, in both cases, the Court of Appeals for the Sixth Circuit

explained that the requisite standard for a plaintiff's Fourteenth Amendment substantive due

process claim in a non-custodial setting was not deliberate indifference but rather that "a

plaintiff must prove either intentional injury or arbitrary conduct intentionally designed to

punish someone." *Upsher*, 285 F.3d at 453; *Brown*, 763 F. App'x at 503.  Thus, the Sixth

Circuit's application of a more stringent standard to the claims at issue in *Upsher*

(employees' exposure to asbestos during carpet removal job) and *Brown* (employee alleged

harm related to complaints about school's drinking water containing unsafe levels of lead)

leaves Defendants' argument that a claim such as that at issue here is implausible without

support.  Because Defendants' arguments regarding the second element of a state-created

danger claim do not show that Plaintiffs have not plausibly pled conscience-shocking

behavior, the Court finds for purpose of this analysis that Plaintiffs have plausibly pled

conscience-shocking behavior.[8]

### 3. <u>Proposed Class Members</u>

The third element of a state-created danger claim is that the plaintiff must plead "a

relationship between the state and the plaintiff existed such that the plaintiff was a

foreseeable victim of the defendant's acts, or a member of a discrete class of persons

subjected to the potential harm brought about by the state's actions, as opposed to a

member of the public in general." *Bright*, 443 F.3d at 281.  Defendants assert that the

alleged harm is not to a discrete group of individuals.  (Doc. 18 at 25.)   Plaintiffs respond

that the Complaint satisfies this element because all identified in the class were foreseeable

victims.  (Doc. 21 at 23.)  The Court concludes that Plaintiffs have satisfied this element

though not as to all groups identified in their Complaint.

The relationship under this element must be "sufficiently close."  *Rivas v. City of*

*Passaic*, 365 F.3d 181, 197 (3d Cir. 2004).  It "contemplates some contact such that the

plaintiff was a foreseeable victim of the defendant's acts in a tort sense" either "individually

---

[8] The Court notes the limited nature of this determination based on multiple factors.   As to the question of whether Defendants "consciously disregarded" the asbestos and lead problems in the school, the Complaint arguably acknowledges that the District took some remedial action in response to reports of asbestos and lead problems. (*See, e.g.* Doc.1 ¶¶ 48, 76, 77.)  Further, in consideration of the conscience-shocking element, the Court is mindful of the relevance of *Collins* discussion of what is conscience shocking in a constitutional sense when competing interests are at issue, 503 U.S. at 128-29, given a school district's need to consider asbestos and lead abatement issues as well as economic considerations when confronted with numerous problems in old buildings.  *See supra* p. 14.

or as a member of a distinct class." *Phillips*, 515 F.3d at 242 (internal quotation marks omitted) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 912 (3d Cir. 1997)). Thus, the relationship may exist where the defendant had "knowledge that a specific individual has been placed in harm's way" or that the plaintiff "[is] part of an identifiable and discrete class of persons subject to the harm the state allegedly has created." *Morse*, 132 F.3d at 914. "Where the state actor has allegedly created a danger towards the public generally, rather than an individual or group of individuals, holding a state actor liable for the injuries of foreseeable plaintiffs would expand the scope of the state-created danger theory beyond its useful and intended limits." *Id.* at 913 n.12. "The purpose of [the special relationship element for a state-created danger claim] is to circumscribe the number of potential plaintiffs stemming from any particular exercise of state authority and shield state actors from liability for any act for which any member of the general public could sue." *Van Orden v. Borough of Woodstown*, 5 F. Supp. 3d 676, 688 (D.N.J. 2014) (citing *Morse*, 132 F.3d at 913 n.12; *Phillips*, 515 F.3d at 242)). In *Crockett v. Southeastern Pennsylvania Transp. Ass'n*, Civ. A. No. 12-4230, 2013 WL 2983117 (E.D. Pa. June 14, 2013), the District Court noted that Third Circuit caselaw on this issue is consistent with decisions from other courts which have concluded that "a discrete class must be 'limited in time and scope'" and "a plaintiff is not part of a discrete class if the risk applies to thousands, or even hundreds, of people and the risk exists for an 'indefinite' duration of time." 2013 WL

30

2983117, at *6 (quoting *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 828-29;

citing *Jones v. Reynolds,* 438 F.3d 685, 698 (6th Cir.2006)).)

While the Court is concerned with the breadth of the defined class (*see* Doc. 1 ¶

122), the Court concludes for purposes of the pending Motion that students and employees

who attended or worked at the affected schools during the relevant period may satisfy the

requisite standard.  However, the same cannot be said for "all persons who are allowed or

were allowed to be present in the Schools within the District from 2016 to the present" (*id*.).

This group is essentially open to the general public in that events at schools can be open to

the public and thus the general public would have been "allowed to be present in the

schools," (*id*.).  Further, even if all events during the relevant time period were restricted as

to attendees, the group could not be considered discrete given it numbers.  Therefore, the

Court does not consider "all persons who are allowed or were allowed to be present in the

Schools within the District from 2016 to the present" (*id*.) a discrete group given its nebulous

contours and the foreseen great difficulty in discerning whether an individual is properly

considered a member of the group.

### 4. **Affirmative Act Requirement**

Finally, to adequately plead the fourth element of a state-created danger claim, the

plaintiff must plausibly show that "a state actor affirmatively used his or her authority in a

way that created a danger to the citizen or that rendered the citizen more vulnerable to

danger than had the state not acted at all." *Bright*, 443 F.3d at 281.  Defendants assert that

Plaintiffs do not identify an affirmative act that created the alleged danger.  (Doc. 18 at 28.)

Plaintiffs respond that Defendants affirmatively created the danger by suppressing

knowledge of the asbestos and lead problems and falsely notifying employees, students,

and parents that coming to the Schools was safe.  (Doc. 21 at 25.)  The Court agrees with

Defendants that the Complaint (Doc. 1) does not allege an affirmative act.

In *Johnson v. City of Philadelphia*, 975 F.3d 394 (3d Cir. 2020), the Court of Appeals

for the Third Circuit explained that it had previously

> noted the "inherent difficulty in drawing a line between an affirmative act and a
> failure to act," and sometimes frame the inquiry as asking whether a
> defendant's "exercise of authority resulted in a departure from th[e] status quo."
> [*L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 242–43 (3d Cir. 2016)].  But we have
> repeatedly held that an alleged failure *to do something*, standing alone, cannot
> be the basis for a state-created danger claim. *See, e.g.*, *Burella v. City of Phila.*,
> 501 F.3d 134, 146–47 (3d Cir. 2007) (police officers' failure to intervene in
> domestic-violence situation did not satisfy element four).

*Johnson*, 975 F.3d at 400–01.

In their Complaint, Plaintiffs cite numerous instances of Defendants' failure to act

and failure to inform about asbestos and lead problems in the Schools.  (*See, e.g.*, Doc. 1

¶¶ 52, 108.)  Regarding affirmative action, Plaintiffs' Complaint alleges that "[t]he District

and the Defendant School Board Members took the affirmative action and made the

affirmative decision to allow the presence of asbestos and lead in unsafe levels within its

Schools for an extended period of time."  (Doc. 1 ¶ 138.)  In their brief in opposition to

Defendants' Motion, Plaintiffs allege that "Defendants actively suppressed knowledge of the asbestos and lead contamination in the Schools, failed to act, and falsely notified employees, students and students' parents that coming to the Schools was safe." (Doc. 21 at 25.)

As Defendants argue, Plaintiffs' Complaint plausibly alleges only a failure to act. (Doc. 18 at 28-31; Doc. 23 at 5-6.)  The authority set out above clearly states that this is not enough to satisfy the fourth element of a state-created danger claim.  Considering the "status quo" in this case to be longstanding problems related to asbestos and lead in the Schools, Plaintiffs allege no facts which indicate that Defendants' "exercise of authority resulted in a departure from th[e] status quo." L.R., 836 F.3d at 242-43.  The conclusory statement regarding Defendants' "affirmative action" and "affirmative decision" in paragraph 138 of the Complaint does not allege *facts* which plausibly show an affirmative act sufficient to support their state-created danger claim.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.  Rather, allegations that Defendants took the affirmative action and made the affirmative decision to allow the presence of asbestos and lead in unsafe levels is "an alleged failure to do something which, standing alone, cannot be the basis for a state-created danger claim." *Burella*, 501 F.3d at 146-47.  The allegations regarding affirmative action contained in Plaintiffs' opposition brief provide no *facts* as to active suppression of knowledge or false notifications.  (*See* Doc. 21 at 25.)  Further, even if Plaintiffs had

presented facts supporting this assertion in their opposition brief, it is well-settled that a

pleading cannot be amended in a brief.  *See Pennsylvania ex rel. Zimmerman v. PepsiCo,*

*Inc.,* 836 F.2d 173, 181 (3d Cir. 1988); *see also Shrum v. Stempien*, Civ. A. No. 3:20-CV-

444, 2021 WL 912520, at *1 n.1 (M.D. Pa. Mar. 9, 2021).

Finally, Plaintiffs' reliance on *Briscoe v. Potter*, 355 F. Supp. 2d 30 (D.D.C. 2004),

and *Gormely v. Wood-El*, 93 A.3d 344, 362 (N.J. 2014), in support of their position that they

have alleged an affirmative act is misplaced.  In *Briscoe*, the plaintiffs alleged that the

defendants made affirmative misrepresentations about the safety of the facility and the D.C.

Circuit Court explained that

> Plaintiffs' allegations are not premised upon the notion that Defendants violated
> their substantive due-process rights solely by failing to warn them of a known
> risk or to provide them with a safe working environment. Instead, Plaintiffs
> allege that Defendants made affirmative misrepresentations about the safety
> of the facility. While it is clear that Plaintiffs do not allege that
> Defendants *created* the danger at Brentwood, Plaintiffs contend that by
> providing false safety briefings and representing to employees that there was
> no evidence of anthrax contamination at the facility (despite alleged actual
> knowledge to the contrary), Defendants increased the risk that Plaintiffs would
> be exposed to deadly anthrax spores and made Plaintiffs more vulnerable to
> such danger.
>
> *Butera* [*v. District of Columbia*, 235 F.3d 637, 651 (D.C. Cir. 2001),] does not
> support the imposition of constitutional liability under the State Endangerment
> theory where the defendants merely failed to take any action or "stood by and
> did nothing" in the face of a known danger. *See Butera, 235 F.3d at 650.*
> However, taking the allegations in Plaintiffs' complaint as true, Defendants did
> not simply "stand by and do nothing" once it became known that the
> Brentwood facility was contaminated with anthrax. Defendants are alleged to
> have engaged in a series of actions which intentionally misled Plaintiffs into

believing the facility was safe and prevented them from acting to preserve their own safety. Giving Plaintiffs the benefit of crediting the complaint allegations and all reasonable inferences therefrom, they have sufficiently alleged that Defendants took the requisite affirmative actions to trigger liability under the State Endangerment Theory to withstand dismissal on the pleadings.

*Briscoe*, 355 F. Supp. 2d at 44-45.

Here, Plaintiffs make no allegations which would allow a reasonable inference that Defendants *intentionally misled* Plaintiffs into believing that there were no problems with asbestos or lead in the Schools—the Complaint contains no allegations which state or imply that Defendants provided false safety briefings on the asbestos and lead issues or represented to Plaintiffs that there was no evidence of asbestos or lead in the schools. The Complaints' allegations essentially aver that Defendants "'stood by and did nothing' in the face of a known danger," *Briscoe*, 355 F. Supp 2d at 44 (quoting *Butera*, 235 F.3d at 650)—conduct which has consistently been rejected as a basis for liability under a state-created danger concept, *Butera*, 235 F.3d at 650 (listing cases). Therefore, *Briscoe* does not support Plaintiffs' assertion that Defendants' activities in this case satisfy the fourth element of their state-created danger claim.

Reliance on *Gormley* is similarly misplaced in that the New Jersey Supreme Court recognized therein that an affirmative act was needed to impose constitutional liability whether the danger was "'created through the exercise of authority'" or "'puts a man in a position of danger from private persons and then fails to protect him.'" 93 A.3d at 362

(quoting *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982)).  As to the latter, the Third

Circuit has stated that the government assumes a duty to keep people safe "'when it

affirmatively places a person in a position of danger that the person would not otherwise

have faced.' *Kamara v. Att'y Gen.*, 420 F.3d 202, 216 (3d Cir. 2005) (internal quotation

omitted). Then, the government must protect people from the dangers it created." *Mears*,

24 F.4th at 883.  No allegations in Plaintiffs' Complaint support an inference that Defendants

*created* the asbestos and lead dangers or affirmatively put Plaintiffs in a position of danger

that Defendants created.

Based on the foregoing analysis, Plaintiffs have not sufficiently pled the necessary

affirmative action on the part of Defendants to maintain their state-created danger claim.

With this conclusion, the Court has determined that Plaintiff's have failed to plausibly plead

two of the four elements of their state-created danger claim.  Therefore, Count I of Plaintiffs'

Complaint must be dismissed.

## C. Medical Monitoring Claim

Defendants contend that Count II of Plaintiffs' Complaint fails to state a claim

because they "fail to identify any federal or constitutional right that is actionable under §

1983." (Doc. 18 at 31.)   Plaintiffs rely on *Wright*, 2015 WL 894237, at *6, to support their

position that Count II states a valid claim under §§ 1983 and 1988. (Doc. 21 at 26.)  The

Court concurs with Defendants that Plaintiffs have not pled an actionable federal claim in

Count II.

42 U.S.C. § 1983 has two essential elements: (1) the conduct complained of must be

"committed by a person acting under color of state law"; and (2) this conduct must "deprive

a person of rights, privileges, or immunities secured by the Constitution or laws of the

United States." *Kost v. Kozakiewicz,* 1 F.3d 176, 184 (3d Cir.1993) (internal quotation

marks omitted).  42 U.S.C. § 1988, in addition to provisions addressing attorney's fees and

expert fees in civil rights actions, provides the following as to the applicability of statutory

and common law in such proceedings:

> The jurisdiction in civil and criminal matters conferred on the district
> courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the
> protection of all persons in the United States in their civil rights, and for their
> vindication, shall be exercised and enforced in conformity with the laws of the
> United States, so far as such laws are suitable to carry the same into effect;
> but in all cases where they are not adapted to the object, or are deficient in the
> provisions necessary to furnish suitable remedies and punish offenses against
> law, the common law, as modified and changed by the constitution and statutes
> of the State wherein the court having jurisdiction of such civil or criminal cause
> is held, so far as the same is not inconsistent with the Constitution and laws of
> the United States, shall be extended to and govern the said courts in the trial
> and disposition of the cause, and, if it is of a criminal nature, in the infliction of
> punishment on the party found guilty.

42 U.S.C. § 1988(a).  "[S]ection 1988 does not create an independent cause of action for

deprivation of constitutional rights, it simply 'defines procedures under which remedies may

be sought in civil rights actions.'" *Shroder v. Volcker*, 864 F.2d 97, 99 (10th Cir. 1988)

(quoting *Brown v. Reardon*, 770 F.2d 896, 907 (10th Cir. 1985)) (citing Moor v. County of Alameda, 411 U.S. 693, 703-04 & n.17 (1973)); *see also Tunstall v. Office of Judicial Support,* 820 F.2d 631, 633 (3d Cir.1987) (citing *Moor,* 411 U.S. at 702, for the proposition that "§ 1988 does not create an independent federal cause of action; it is merely intended to complement the various acts which do create federal causes of action for the violation of federal civil rights").

Plaintiffs do not identify a federal or constitutional right to medical monitoring independent of their state-created danger claim.  (*See* Doc. 1 ¶¶ 142-147.)  The allegations associated with Count II assert that Defendants

> were *negligent* in allowing the presence of asbestos and lead in unsafe levels within its Schools for an extended period of time, in failing to inform its students, parents, employees, and independent contractors of the presence asbestos and lead in unsafe levels until January 2020, and in failing to begin to take any steps to rectify the asbestos and lead problems until January 2020.

(Doc. 1 ¶ 143 (emphasis added).)

The Third Circuit Court stated in *Kaucher* that "the due process clause does not . . . impose federal obligations analogous to those imposed by state tort law."  455 F.3d at 423-24.  The Supreme Court clearly foreclosed state tort negligence liability under the due process clause in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), where the Court stated that "[l]iability for negligently inflicted harm is categorically beneath the constitutional

due process threshold." *Id.* at 849.  Thus, Plaintiffs' allegation of negligence cannot support a claim under §§ 1983 and 1988 as alleged in Count II of the Complaint.

In their opposition brief, Plaintiffs assert that medical monitoring is a separate cause of action under Pennsylvania law.  (Doc. 21 at 38.)  This assertion requires no further analysis because Count II is brought pursuant to 42 U.S.C. 1983 and 42 U.S.C. § 1988 (*see* Doc. 150 at 1) and cannot be amended in a brief, *see supra* pp. 33-34.

To the extent Count II hinges on Count I (*see* Doc. 21 at 39-40), the claim for medical monitoring also fails.  As discussed previously, the Court assumed for the purpose of analyzing the first element of Plaintiffs' state-created danger claim that Plaintiffs had shown some "harm" but concluded that the "harm" was not constitutionally cognizable because Plaintiffs had not sufficiently pled that Defendants' conduct was the fairly direct cause of Plaintiffs' alleged harm.  *See supra* pp 22-25.  Thus, to the extent that Count II hinges on Plaintiffs' state-created danger claim in Count I, Count II must be dismissed.

Plaintiffs' reliance on *Wright* does not undermine this determination in that the Court does not read *Wright* to establish an independent federal/constitutional cause of action based on the alleged need for medical monitoring in the absence of a relationship between the harm, i.e., the need for increased medical monitoring, and a separately cognizable federal or constitutional claim for relief.  *Wright* ultimately concluded that the plaintiffs had satisfied the requirements of their state-created danger claim in a situation where the

defendant Philadelphia Housing Authority's maintenance crew had *caused* asbestos to become airborne in a plaintiff's apartment and their supervisor knew of the problem, knew that it could cause harm, and subsequently told the plaintiff not to worry about "the little white stuff floating in the air" which she had complained about.  2015 WL 294837, at *2, 9. These facts are readily distinguishable from those alleged in Plaintiffs' Complaint and provide no support for the viability of Count II.

## D. <u>Municipal Liability Claims</u>

Defendants assert that Plaintiffs' allegations are insufficient to state a claim for municipal liability because they plead no facts to support imposing liability on the School District.  (Doc. 18 at 33.)  Plaintiffs maintain that they have alleged sufficient facts "to raise a reasonable expectation that discovery will reveal further evidence of the School District's policies and customs which violated Plaintiffs' rights."  (Doc. 21 at 28.)  The Court agrees that Plaintiffs' Complaint does not identify a custom, policy, or decision maker as required for liability pursuant to *Monell* and its progeny.  (*See id.* at 34.)  However, the issue of municipal liability need not be further discussed at this juncture based on the determination that both claims in Plaintiffs' Complaint are properly dismissed.[9]

_____

[9] The Court notes that previous *arguendo* assumptions regarding municipal liability, *see supra* pp. 24 & n.5, 27, were for purposes of consideration of the pending Motion only and are not determinations on the potential merits of any aspect of a municipal liability claim.  The Court further notes that the lack of factual plausibility discussed generally in the preceding sections of this Memorandum Opinion applies with added force to claims for municipal liability under *Monell* and its progeny which impose additional requirements for showing such liability.

### E. **Official Capacity Claims**

Defendants state that Plaintiffs do not specify whether they assert claims against Defendant Board Members in their individual or official capacities and, to the extent the claims are brought against Defendant Board Members in their official capacities, they must be dismissed as redundant of the claims brought against the District.  (Doc. 18 at 43.) Plaintiffs agree that claims against Defendant Board Members in their official capacities "are essentially claims against the School District Defendant, but "they can properly proceed as an alternative should the District be dismissed for any reason."  Taking both parties' positions into consideration, the Court concludes that dismissal of Defendant Board Members in their official capacities without prejudice is appropriate.

### F.  **Qualified Immunity**

Defendants assert that the doctrine of qualified immunity bars Plaintiffs' claims against Defendant Board Members.  (Doc. 18 at 49.)  Plaintiffs respond that Defendants have not met their burden of showing that qualified immunity applies here.  (Doc. 21 at 46.) The Court concludes that Defendants have shown that Plaintiffs' claims against Defendant School Board Members are barred by the doctrine of qualified immunity.

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their duties responsibly."

*Pearson v. Callahan,* 555 U.S. 223 (2009). "The general rule of qualified immunity is

intended to provide government officials with the ability 'reasonably [to] anticipate when their

conduct may give rise to liability for damages.'" *Anderson v. Creighton,* 483 U.S. 635, 645

(1987) (quoting *Davis v. Scherer,* 468 U.S. 183, 195 (1984)) (alteration in original).

The burden of establishing qualified immunity falls to the official claiming it as a

defense. *See Harlow v. Fitzgerald,* 457 U.S. 800, 819 (1982).

In *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 211 L. Ed. 2d 164, 2021 WL 4822662

(2021), the Court stated that

> "[q]ualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White* v. *Pauly*, 580 U. S. ——, ——, 137 S.Ct. 548, 551, 196 L.Ed.2d 463 (2017) (*per curiam*) (internal quotation marks omitted). A right is clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015) (*per curiam*) (internal quotation marks omitted). Although "this Court's case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White*, 580 U. S., at ——, 137 S.Ct., at 551 (alterations and internal quotation marks omitted). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (*per curiam*) (internal quotation marks omitted).

*Rivas-Villegas,* 2021 WL 4822662, at *2.

This Court has summarized the doctrine of qualified immunity as follows:

Government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or

constitutional right[ ] of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009). This doctrine, known as qualified immunity, provides officials performing discretionary functions not only defense to liability, but also "immunity from suit." *Crouse v. S. Lebanon Twp.*, 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009) (Conner, J.) (citations omitted). Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231.

Determinations regarding qualified immunity, and its application in a given case, require a court to undertake two distinct inquiries. First, the court must evaluate whether the defendant violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001), *abrogated in part by Pearson*, 555 U.S. 223. If the defendant did not actually commit a constitutional violation, then the court must find in the defendant's favor. *Saucier*, 533 U.S. at 201. If the defendant is found to have committed a constitutional violation, the court must undertake a second, related inquiry to assess whether the constitutional right in question was "clearly established" at the time the defendant acted. *Pearson*, 555 U.S. at 816; *Saucier*, 533 U.S. at 201-02. The Supreme Court of the United States has instructed that a right is clearly established for purposes of qualified immunity if a reasonable state actor under the circumstances would understand that his or her conduct violates that constitutional right. *Williams v. Bitner*, 455 F.3d 186, 191 (3d Cir. 2006) (citing *Saucier,* 533 U.S. at 202).

*Bomba v. Dep't of Corr.*, No. 3:16-CV-1450, 2018 WL 7019254, at *7–8 (M.D. Pa. Sept. 4, 2018), *report and recommendation adopted in part, rejected in part sub nom. Bomba v. Commonwealth of Pennsylvania Dep't of Corr.*, No. 3:16-CV-01450, 2019 WL 177471 (M.D. Pa. Jan. 11, 2019).

In this legal construct, the objective reasonableness of the defendant's conduct rather than the defendant's subjective intent is relevant to the determination of whether the doctrine applies.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In *Pearson*, the Supreme Court clarified that the procedure set out in *Saucier* is often appropriate, but was no longer mandatory: "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  555 U.S. at 236.

In *Kane v. Barger*, 902 F.3d 185 (3d Cir. 2018), the Circuit Court distilled from Supreme Court precedent the following principles for determining when a constitutional right may be deemed clearly established:

> A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. We do not require a case directly on point to find that a right was clearly established. Rather, to be clearly established, a right need only have a sufficiently clear foundation in then-existing precedent. In this inquiry, we look first to applicable Supreme Court precedent.  However, even if none exists, it may be possible that a robust consensus of cases of persuasive authority in the Courts of Appeals could clearly establish a right for purposes of qualified immunity.
>
> Defining the right at issue is critical to this inquiry, and we must frame the right in light of the specific context of the case, not as a broad general proposition.  This does not mean that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful.  Accordingly, it need not be the case that the exact conduct has previously been held unlawful so long as the contours of the right are sufficiently clear.  Said another way, we do not require a case directly mirroring

the facts at hand, so long as there are sufficiently analogous cases that should have placed a reasonable official on notice that his actions were unlawful.  As such, officials can still be on notice that their conduct violates established law even in novel factual circumstances.

902 F.3d at 194-195 (internal quotations and citations omitted).

*White* expanded on the concept of framing the issue in the specific context of the case and consideration of relevant precedent, reiterating "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" 137 S. Ct. at 552 (quoting *Ashcroft v. al–Kidd,* 563 U.S. 731, 742 (2011)).  Rather, "the clearly established law must be "particularized" to the facts of the case. *Id.* (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).  The Court looked to whether the reviewing court had identified a case where an officer acting under similar circumstances to the § 1983 defendant officer in *White* had been charged with violating the Fourth Amendment.  *Id.* "'[G]eneral statements of the law are not inherently incapable of giving fair and clear warning' to officers, *United States v. Lanier,* 520 U.S. 259, 271, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997), but 'in the light of pre-existing law the unlawfulness must be apparent,' *Anderson v. Creighton, supra,* at 640, 107 S. Ct. 3034." *White*, 137 S. Ct. at 552. The Court further noted that the appellate court had recognized that it was a case which presented a unique set of facts and circumstances and [t]his alone should have been an important indication that White's conduct did not violate a 'clearly established' right." *Id.*

Here, the Court has determined that Defendant Board Members did not violate Plaintiffs' constitutional rights, a determination which entitles them to qualified immunity. However, if the Court were to have first addressed the issue of whether these Defendants violated a "clearly established right," the Court would reach the same conclusion.  This is so because authority related to the state-created danger theory of liability did not make it "sufficiently clear" that "every reasonable [school board member]" aware of asbestos and lead problems in district schools would have understood that his or her failure to act violated employees' or students' substantive due process rights.  *Mullenix,* 577 U.S. at 11.  While Plaintiffs are correct that every reasonable school board member would have understood that a state-created danger theory of liability existed (*see* Doc. 21 at 54-55), no precedential decision of the United States Supreme Court, the Court of Appeals for the Third Circuit, or a "robust consensus of cases of persuasive authority in the Courts of Appeals," *Kane*, 902 F.3d at 194, applied that doctrine to facts even close to those alleged here as required under the clearly-established prong of the inquiry, *id.* at 194-95.  As discussed in the preceding sections of this Memorandum Opinion and in Defendants' supporting brief (Doc. 18 at 52, 53), no caselaw supports a finding that school board members who are made aware of asbestos and lead problems (or problems with similar hazardous materials) in schools within their districts would violate substantive due process rights if they failed to take suggested remediation action.

Plaintiffs cite no authority to the contrary.  However, they point to *Brennan v. Norton*, 350 F.3d 399, 415 (3d Cir. 2005), for the proposition that therein the Third Circuit "recognized that 'the dangers of asbestos [are] well established and require no affirmation or additional proof.'" (Doc. 21 at 49.)   *Brennan* does not provide the suggested support because First Amendment rights were at issue, 350 F.3d at 405, and the recognition of asbestos as a dangerous substance does not clearly establish a violation of a Fourteenth Amendment substantive due process right based on the existence of asbestos in schools.

Plaintiffs also rely on the Eastern District Court's decision in *Wright*.  (*See id*. (citing *Wright*, 2015 WL 894237, at *13).)   Again, this reliance is misplaced.  First, *Wright* is not a precedential decision of the Third Circuit which would be required to satisfy the "clearly established" criteria.  *See supra* pp. 40-43.  Second, as Plaintiffs acknowledge, *Wright* addressed a situation where the defendants *caused* the release of airborne asbestos (Doc. 21 at 49) which is not the case here.

Given the broad recognition by the Supreme Court and Third Circuit that a reviewing court conducting the clearly established inquiry should frame the issue with specificity, *see supra* pp. 42-45, the Court agrees with Defendants that no caselaw suggests that Defendant Board Members could have been on notice that their conduct violated a constitutional right given the factual allegations in the Complaint.  (*See* Doc. 18 at 53.)

Thus, the Court concludes that Defendant Board Members are entitled to qualified immunity.

## V. Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss the Complaint (Doc. 17) will be granted.  While it appears unlikely that Plaintiffs can overcome the pleading deficiencies and qualified immunity defense discussed above, in an abundance of caution, the Court will allow Plaintiffs to file an amended complaint.  A separate Order will be entered.

_____
Robert D. Mariani
United States District Judge